J-E03003-15

2016 PA Super 3

| | |
|---|---|
| IN RE: BETTY J. FIEDLER, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | |
| APPEAL OF: E. O'REAN FIEDLER, | |
| Appellant | No. 2264 MDA 2013 |

Appeal from the Order Entered December 4, 2013
In the Court of Common Pleas of Lancaster County
Orphans' Court at No(s): 36-2010-1237

| | |
|---|---|
| IN RE: BETTY J. FIEDLER, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | |
| APPEAL OF: LATISHA BITTS, | |
| Appellant | No. 35 MDA 2014 |

Appeal from the Order Entered December 4, 2013
In the Court of Common Pleas of Lancaster County
Orphans' Court at No(s): 36-2010-1237

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., BOWES, PANELLA, SHOGAN, LAZARUS, OTT, STABILE, and JENKINS, JJ.

OPINION BY SHOGAN, J.:                    **FILED JANUARY 05, 2016**

This is an appeal from the Adjudication of Account ("Account") by E. O'Rean Fiedler ("O'Rean") and a cross-appeal by Latisha Bitts ("Latisha"). O'Rean challenges gift checks written by her sister Latisha, who held their

mother's Power of Attorney ("POA"). We hold that when a designated POA agent writes gift checks from a principal's account, the agent is constrained by the specific gift-giving limitations listed in the POA document and the statutory requirements of the Pennsylvania Decedents, Estates and Fiduciaries Code ("Code"). Accordingly, we affirm in part and reverse in part.

## I. Facts and Procedural History

Betty Fiedler ("Decedent") had two daughters, O'Rean, the objector to the Account, and Latisha, who were the sole, equal beneficiaries under Decedent's will. O'Rean has no children; Latisha has a biological son, Adam Buckius ("Adam"), a step-son, Sean Bitts ("Sean"), and two granddaughters, Emma and Lydia Buckius. N.T., 1/7/13, at 101; N.T., 1/9/13, at 190.

Decedent, who suffered from end-stage emphysema, resided at St. Anne's Retirement Community from July 2005, after she fell and broke her elbow requiring surgery, until her death on September 10, 2009. N.T., 1/7/13, at 32, 65, 104, 128. All of Decedent's assets were contained in an Ameriprise account ("Ameriprise Account"), which was established prior to 2006, with an original principal balance of $709,953. The Ameriprise Account was titled to Decedent as a "TOD" or "transfer on death" account; both O'Rean and Latisha were named as beneficiaries of the Ameriprise Account. N.T., 1/7/13, at 56.

On February 17, 2004, following the death of her husband, Decedent designated both of her daughters as her agents pursuant to a power of attorney ("POA"). N.T., 1/7/13, at 57–58, 103. O'Rean, age sixty-eight, was a former teacher who retired in June of 1996. N.T., 1/9/13, at 229–230. Latisha, age sixty-five, also was retired. N.T., 1/7/13, at 129. Both Latisha and O'Rean testified that under the POA, O'Rean paid all of Decedent's bills, managed her affairs, and "was more involved" with Decedent than Latisha. *Id*. at 86–87, 94, 132. In fact, after O'Rean's father died in 2004, O'Rean visited Decedent every day, cleaned her house, took her shopping, and cared for Decedent's dog. N.T., 1/9/13, at 234. O'Rean signed checks that paid Decedent's bills. She did not sign gift checks to Latisha or herself, testifying that it was inappropriate to gift money to herself or her sister from her mother. N.T., 1/7/13, at 86; 1/9/13, at 243.

O'Rean testified that in July 2006, Decedent told her that Latisha wanted Decedent to gift Latisha and O'Rean each $10,000. N.T., 1/9/13, at 245. O'Rean was opposed to the action because Decedent had already gifted them over $12,000 each in personal property when Decedent sold her house that year. Nevertheless, O'Rean wrote a check to herself dated July 5, 2006, in the amount of $10,000, which was signed by Decedent, and an identical check to Latisha, also signed by Decedent, at Decedent's direction. N.T., 1/7/13, at 88–89. Similarly, O'Rean wrote a $10,000 check to Adam at Decedent's direction, which O'Rean signed. *Id*. at 96. On the memo line

of the check was the word, "Final." *Id*. at 146. Latisha testified that Adam telephoned O'Rean for an explanation of the memo line, and her response was that Decedent had told her "this would be the last check."[1] *Id*. at 146. Upon hearing that, Latisha visited Decedent and inquired about O'Rean's response to Adam; Decedent allegedly denied saying the check was to be Adam's last check. *Id*. Less than two months later, Latisha asked Gregory Nauman, Decedent's financial advisor, to change the mailing address of Decedent's Ameriprise Account statements from O'Rean to Latisha. *Id*. at 17, 146–147. O'Rean visited her mother on September 29, 2006, and asked why the Ameriprise Account statements had been changed to Latisha's address. Decedent refused to discuss the change, and asked O'Rean to leave her room.[2] *Id*. at 82–83. That was the last time O'Rean and Decedent spoke. *Id*. at 82. One month later, on October 11, 2006, Decedent revoked the POA naming both daughters as agents and executed a new POA designating Latisha as her sole agent. *Id*. at 44, 146.

Latisha confirmed that "as soon as [she] became the agent under the subsequent power of attorney signed in 2006, gifts started to be made." *Id*.

---

[1] Latisha also testified that she never contacted Decedent's attorney, Patti Spencer, about Decedent's ability to make a gift to Adam, but later contradicted herself and revealed that she did so inquire. N.T., 1/7/13, at 135–136, 138.

[2] Latisha testified that Decedent and O'Rean, instead, argued about O'Rean's relationship with her "significant other" and his mother. N.T., 1/7/13, at 110.

at 151–152. During the period in which Latisha was named as sole agent under the POA, she signed and wrote checks made payable to herself, as well as her son Adam, her step-son Sean, and their wives, including Adam's then-wife, Kimberly Buckius ("Kim"), and Sean's wife, Christy Bitts ("Christy") (collectively, "Additional Respondents") that totaled $480,515.[3] N.T., 1/7/13, at 113–123; N.T., 1/9/13, at 181–182, 186–189, 191–196. Included in the checks that Latisha signed as POA was a check to Adam in the amount of $330,000. Mr. Nauman testified that Latisha contacted him about the "large gift to Adam." N.T., 1/7/13, at 46. Decedent's expenses at St. Anne's Retirement Community totaled $239,758.86. Account, 6/15/10, Summary at unnumbered page 2. The Account listed the "combined balance on hand" as $0.00. *Id*.

Latisha maintained that she did not exercise discretionary power in making any gifts as POA and that the checks she wrote were at Decedent's direction. N.T., 1/7/13, at 112–128. Conversely, O'Rean characterized the checks as gifts of money made by Latisha pursuant to the POA. Petition to Show Cause, 4/9/10, at 2.

Procedurally, the instant matter began on April 9, 2010, when O'Rean filed a petition requesting that Latisha show cause why she should not file an

---

[3] Latisha also wrote checks to Adam's daughters, Emma and Lydia. Account, 6/15/10, at 3, Addendum to ¶ 6. The validity of these checks is not involved in this appeal.

Account with respect to the POA.[4]  Latisha filed an answer on May 13, 2010,

in which she objected to filing the Account.  Following oral argument on the

issue, the orphans' court ordered the Account to be filed.  Latisha filed a

petition for reconsideration on May 26, 2010.  Latisha ultimately filed the

Account on June 15, 2010, for the period from October 11, 2006, through

November 27, 2009, identifying the category of "gifts"[5] that totaled

$480,515.  Account, 6/15/10, Summary at unnumbered 2.  As noted, the

Account listed the balance on hand as $0.00.  *Id*.

O'Rean filed objections to the Account on June 23, 2010, and the

Account was called for audit on July 6, 2010.  On August 4, 2010, O'Rean

filed a petition to show cause why Latisha and Additional Respondents

should not be required to return the gifts they received from Decedent.  That

day, the orphans' court issued a citation to show cause why Adam and Kim

Buckius and Sean and Christy Bitts should not be deemed additional

respondents.  Latisha and Additional Respondents filed an answer and new

---

[4]  Latisha had offered the last will and testament of Decedent into probate and, as executrix of the estate, averred that there were no probate assets. Petition to Show Cause, 4/9/10, at 1; Petition for Reconsideration, 5/26/10, at ¶ B.

[5]  As the orphans' court noted, the Account filed by Latisha grouped the monetary transfers together into one category entitled "gifts."  Orphans' Court Opinion, 12/4/13, at 2 n.1.  While we adopt this nomenclature to describe the checks in question for ease of reference, their categorization as "gifts" was at issue below.  As the orphans' court stated, "It is apparent that the real question in the instant action is who gave these 'gifts' and whether they were indeed valid gifts."  *Id*.

matter to the petition to show cause on September 9, 2010. On September 29, 2010, O'Rean filed preliminary objections to the answer, and Latisha filed an amended answer on October 19, 2010. O'Rean then filed preliminary objections to the amended answer, which the orphans' court denied on January 27, 2011.

Thereafter, O'Rean filed a motion for partial judgment on the pleadings on March 16, 2011, seeking the return to the estate of $360,000 in gifts that were made to Latisha and Adam. The orphans' court denied the motion on August 31, 2011. By separate order that same date, the orphans' court ruled upon O'Rean's August 4, 2010 citation to show cause why Adam and Kim Buckius and Sean and Christy Bitts should not be deemed additional respondents, and added them to the lawsuit.

On June 22, 2012, O'Rean filed a motion *in limine* seeking to preclude "the testimony of [Latisha], [Additional Respondents], and Mr. Gregory Nauman on three separate grounds, namely that their testimony would violate the Dead Man's Statute; the precedent established in [***Estate of Slomski v. Thermoclad Co.***, 956 A.2d 438 (Pa. Super. 2008), *reversed in part*, 987 A.2d 141 (Pa. 2009),] and relevance," regarding Decedent's verbalized intent prior to her death. Orphans' Court Adjudication, 12/4/13, at 3. The orphans' court denied the motion *in limine* on September 12, 2012.

A two-day hearing was held on January 7 and 9, 2013. At the start of the January 7, 2013 hearing, all counsel entered a stipulation, which in part, set forth the name of each recipient of the funds in dispute, the amount of funds transferred to each recipient, and whether the amount transferred was in excess of the amount that could be excluded from taxable gifts under the Internal Revenue Code ("IRC"). N.T., 1/7/13, at 7–10. In pertinent part, that stipulation provided:

> AND NOW THIS 7th day of January, 2013, counsel of record hereby stipulate[] and agree[] to the following:
>
> * * *
>
> 2. The transfer of $12,000 to Christy Bitts on December 23, 2006 was not in excess of the amount which could be excluded from taxable gifts by Sections 2503(b) or 2503(e) of the Internal Revenue Code, including exclusions available through the use of Section 2513 of the [I]nternal Revenue Code ("annual exclusion amount").
>
> 3. The transfer of $12,000 to Christy Bitts on December 16, 2007 was not in excess of the annual exclusion amount.
>
> 4. The transfer of $12,000 to Latisha Bitts during 2007 was not in excess of the annual exclusion amount.
>
> 5. The transfer of $100 to Latisha Bitts on December 30, 2008 was not in excess of the annual exclusion amount.
>
> 6. The transfer of $12,000 to Sean Bitts on December 23, 2006 was not in excess of the annual exclusion amount.
>
> 7. The transfer of $12,000 to Sean Bitts on December 16, 2007 was not in excess of the annual exclusion amount.
>
> 8. The transfer of $12,000 to Adam Buckius on January 1, 2007 was not in excess of the annual exclusion amount.

9. The transfer of $12,000 to Adam Buckius on January 1, 2008 was not in excess of the annual exclusion amount.

10. The transfer of $12,000 to Kim Buckius on December 23, 2006 was not in excess of the annual exclusion amount.

11. The transfer of $12,000 to Kim Buckius on August 20, 2007 was not in excess of the annual exclusion amount.

12. The transfer of $12,000 to Kim Buckius on January 1, 2008 was not in excess of the annual exclusion amount.

13. The transfer of $106.50 to Lydia was not in excess of the annual exclusion amount.

14. The transfer of $108.50 to Emma was not in excess of the annual exclusion amount.

15. Betty J. Fiedler was a resident of St. Anne's Retirement Community from July, 2005 until the time of her death on October 11, 2009.[6]

16. Latisha Bitts received gifts of $25,200 during 2007 in excess of the annual gift tax exclusion.

17. Adam Buckius received gifts of $335,000 during 2008 in excess of the annual gift tax exclusion.

Stipulation, 1/7/13, at unnumbered 1–2.

On December 4, 2013, the orphans' court entered its adjudication confirming the Account with the exception of two gifts Latisha made to herself totaling $25,200 and to post-death funeral expenses in the amount of $7,674. The orphans' court determined that all of the gifts that were

---

6  Elsewhere in the record, the date of death was described as September 10, 2009. **See e.g.**, N.T., 1/7/13, at 128. The orphans' court, as well, identified September 10, 2009, as the date of death. Orphans' Court Opinion, 12/4/13, at 1.

within the annual IRC exclusion amount were valid and permissible; thus, the gifts to Additional Respondents were deemed valid gifts pursuant to the POA. The orphans' court also concluded that gifts totaling $335,000 to Adam, which were not within the annual exclusion amount, nevertheless were valid because they were supported by independent testimony that they were not made pursuant to the POA but were valid *inter vivos* gifts from Decedent. The orphans' court surcharged[7] Latisha $25,200 plus $7,674, for a total of $32,874.

O'Rean filed a notice of appeal on December 23, 2013, and Latisha filed a cross-appeal on December 31, 2013. All parties and the orphans' court complied with Pa.R.A.P. 1925. This Court consolidated the appeals on February 6, 2014.

A unanimous panel of this Court filed an opinion affirming in part, reversing in part, and remanding to the orphans' court. *In re Betty J. Fiedler*, 2015 PA Super 10 (Pa. Super. 2015). Thereafter, Latisha and Adam filed a motion for reargument *en banc*. We granted the motion and heard oral arguments on October 15, 2015. This matter is now ripe for disposition.

_____

[7] "Surcharge is the penalty for failure to exercise common prudence, common skill and common caution in the performance of the fiduciary's duty and is imposed to compensate beneficiaries for loss caused by the fiduciary's want of due care." *In re Estate of Bechtel*, 92 A.3d 833, 839 (Pa. Super. 2014) (citing *In re Miller's Estate*, 26 A.2d 320, 321 (Pa. 1942)).

## II. Issues

O'Rean's appeal docketed at 2264 MDA 2013 raises the following two issues:

A. Whether the orphans' court erred in failing to grant all of O'Rean Fiedler's objections to the account based on the documentary evidence she presented and the stipulations of counsel, and in allowing and considering certain testimonial evidence?

B. Whether, even assuming arguendo that the orphans' court did not err in failing to grant all of O'Rean Fiedler's objections to the account based on the documentary evidence she presented and the stipulations of counsel, and in allowing and considering certain testimonial evidence, the orphans' court erred in finding the testimonial evidence supported [Latisha's] gift making activities?

O'Rean's Substituted Brief (hereinafter "O'Rean's Brief) at 3.

Latisha's cross-appeal docketed at 35 MDA 2014 raises the following issue:

E. Did the Orphans' Court Err When It Surcharged Latisha Bitts In The Amount Of $25,200 Because Latisha Provided Third-Party And Independent Credible Testimony Regarding Gifts [Decedent] Made To Latisha?

Latisha's Brief on Reargument (hereinafter "Latisha's Brief") at 4.[8] We will address the issues, in that they all relate to the validity of the gifts, as a whole in due order.

_____

[8] In her original brief to the Panel, Latisha raised the following two issues, the second of which is substantially the same as the issue she has raised on reargument:
*(Footnote Continued Next Page)*

- 11 -

### III. Standard of Review

Our standard of review is as follows:

> Our standard of review of the findings of an Orphans' Court is deferential.
>
> > When reviewing a decree entered by the Orphans' Court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion.
>
> However, we are not constrained to give the same deference to any resulting legal conclusions.
>
> *In re Estate of Harrison*, 745 A.2d 676, 678–79 (Pa. Super. 2000), *appeal denied*, 563 Pa. 646, 758 A.2d 1200 (2000) (internal citations and quotation marks omitted). "The Orphans'

*(Footnote Continued)* —————————————

1. Should [O'Rean's] demand for surcharge of Latisha Bitts for $7,674.00 for payment of Decedent's funeral expenses be denied when [O'Rean] withdrew her objection to payment of the funeral expenses from Latisha's account, failed to meet her burden in proving the payment was improper, and Latisha was a beneficiary of the account and therefore had authority to write checks from the account?

2. Should [O'Rean's] demand for surcharge of Latisha Bitts in the amount of $25,200.00 for gifts be denied when Adam Buckius and Latisha Bitts were both competent witnesses whose testimony proved the validity of the gifts and [O'Rean] offered no and/or insufficient evidence to invalidate the gifts?

Latisha's Panel Brief at 3. We have addressed both issues originally raised before the panel.

Court decision will not be reversed unless there has been an abuse of discretion or a fundamental error in applying the correct principles of law." *In re Estate of Luongo*, 823 A.2d 942, 951 (Pa. Super. 2003), *appeal denied*, 577 Pa. 722, 847 A.2d 1287 (2003).

*In re Estate of Whitley*, 50 A.3d 203, 206–207 (Pa. Super. 2012).

This Court's standard of review of questions of law is *de novo*, and the scope of review is plenary, as we may review the entire record in making our determination. *Kripp v. Kripp*, 849 A.2d 1159, 1164 n.5 (Pa. 2004). When we review questions of law, our standard of review is limited to determining whether the trial court committed an error of law. *Kmonk-Sullivan v. State Farm Mutual Automobile Ins. Co.*, 746 A.2d 1118, 1120 (Pa. Super. 1999) (*en banc*).

## IV. The Gifts and Power of Attorney

In its December 4, 2013 decision, the orphans' court listed and grouped the checks by payee that Latisha wrote and signed, as follows:

| | |
|---|---|
| Christy Bitts: | $12,000.00 on December 23, 2006. |
| Christy Bitts: | $12,000.00 on December 16, 2007. |
| | |
| Latisha Bitts: | $25,100.00 on January 1, 2007. |
| Latisha Bitts: | $100.00 on December 11, 2007. |
| Latisha Bitts: | $12,000.00 on December 17, 2007. |
| Latisha Bitts: | $100.00 on December 30, 2008. |
| | |
| Sean Bitts: | $12,000.00 on December 23, 2006. |
| Sean Bitts: | $12,000.00 on December 16, 2007. |
| | |
| Adam Buckius: | $12,000.00 on January 1, 2007. |
| Adam Buckius: | $12,000.00 on January 1, 2008. |
| Adam Buckius: | $5,000.00 on April 29, 2008. |
| Adam Buckius: | $330,000.00 on October 1, 2008. |

| | |
|---|---|
| Kim Buckius: | $12,000.00 on December 23, 2006. |
| Kim Buckius: | $12,000.00 on August 20, 2007. |
| Kim Buckius: | $12,000.00 on January 1, 2008. |
| Lydia Buckius: | Birthday gift of $50.00 undated. |
| | Christmas gift of $56.50 undated. |
| Emma Buckius: | Birthday gift of $52.00 undated. |
| | Christmas gift of $56.50 undated. |

Orphans' Court Adjudication, 12/4/13, at 3–4.

Chapter 56 of the Code[9] addresses powers of attorney. *In re Weidner*, 938 A.2d 354, 359 (2007). The Pennsylvania Legislature set forth special rules for empowering an agent to make a gift through a power of attorney in 1999 when it added 20 Pa.C.S. § 5601.2, Special rules for gifts, to the Code; *see also* 1999 Pa. Laws 39. In relevant part, section 5601.2 provides as follows:

**§ 5601.2. Special rules for gifts**

**(a) General rule.**--A principal may empower an agent to make a gift in a power of attorney **only as provided in this section**.

**(b) Limited gifts.**--A principal may authorize an agent to make a limited gift as defined under section 5603(a)(2) (relating to implementation of power of attorney) by the inclusion of:

> (1) the language quoted in section 5602(a)(1)[10] (relating to form of power of attorney); or

---

[9] Act 1974, Dec. 10, P.L. 816, No. 271, § 5, imd. effective, substituted "Decedents, Estates and Fiduciaries" for "Probate, Estates and Fiduciaries Code."

[10] 20 Pa.C.S. § 5602(a)(1) delineates the power "[t]o make limited gifts."

- 14 -

(2) other language showing a similar intent on the part of the principal to empower the agent to make a limited gift.

**(c) Unlimited gifts.**--A principal may authorize an agent to make any other gift only by specifically providing for and defining the agent's authority in the power of attorney.

* * *

**(e) Equity.**--An agent and the donee of a gift shall be liable as equity and justice may require to the extent that, as determined by the court, a gift made by the agent is inconsistent with prudent estate planning or financial management for the principal or with the known or probable intent of the principal with respect to disposition of the estate.

20 Pa.C.S. § 5601.2 (emphases added in subpart (a)).[11]

Section 5603 of the Code, Act of June 30, 1972, P.L. 508, No. 164, § 2 (as amended 20 Pa.C.S. §§ 101–8815), describes, *inter alia*, an agent's power to make limited gifts, in relevant part, as follows:

**§ 5603. Implementation of power of attorney**

**(a) Power to make limited gifts.—**

* * *

(2) A power "to make limited gifts" shall mean that the agent may make only gifts for or on behalf of the principal which are limited as follows:

(i) The class of permissible donees under this paragraph shall consist solely of the

---

[11] Pursuant to 2014, July 2, P.L. 855, No. 95, § 220 Pa.C.S., 20 Pa.C.S. § 5601.2 was repealed effective Jan. 1, 2015, and the "amendment, addition or repeal of 20 Pa.C.S . . . § 5601.2 . . . applies only to powers of attorney created on or after the effective dates of those provisions."

principal's spouse, issue and a spouse of the principal's issue (including the agent if a member of any such class), or any of them.

(ii) **During each calendar year**, the gifts made to any permissible donee, pursuant to such power, shall have an aggregate value **not in excess of**, and shall be made in such manner as to qualify in their entirety for, **the annual exclusion from the Federal gift tax** permitted under section 2503(b) of the Internal Revenue Code of 1986 (Public Law 99-514, 26 U.S.C. § 1 et seq.) for the principal and, if applicable, the principal's spouse.

20 Pa.C.S. § 5603 (emphasis added to subpart (a)(2)(ii)).[12] Thus, authorized gifts to qualified individuals could not exceed that calendar year's annual gift tax exclusion amount.

A power of attorney is "an instrument granting someone authority to act as agent or attorney-in-fact for the grantor." BLACK'S LAW DICTIONARY at 1209 (8th ed. 2004). An attorney-in-fact is someone "who is designated to transact business for another; a legal agent." *Id*. at 138; ***see also*** 20 Pa.C.S. § 5601(f) (defining the term "agent" as a "person designated by a principal in a power of attorney to act on behalf of that principal").

---

[12] Although not applicable here, new legislation encompassing an agent's power to make limited gifts was added effective January 1, 2015. 20 Pa.C.S. § 5603(a.1); 30 Standard Pennsylvania Practice 2d § 143:28 (footnotes omitted).

We must examine the relevant language of the instant POA document. The POA document signed by Decedent defined the type of gifts Latisha was authorized to make, as follows:

**SPECIFIC ADDITIONAL POWERS INCLUDED IN GENERAL POWER**

\* \* \*

    3. Power Concerning Gifts.

    To make limited gifts, as defined in Chapter 56 of the Pennsylvania Probate, Estates and Fiduciaries Code. In addition, to make gifts to, or for the benefit of, any donee who has been the recipient of gifts from me or whom my attorney reasonably considers to be the natural object of my bounty. **All gifts made under this Section 3. shall be gifts which can be excluded from taxable gifts by Sections 2503(b) or 2503(e) of the Internal Revenue Code, including exclusions available through the use of Section 2513 of the Internal Revenue Code.**

General Power of Attorney, 10/11/06, at 4 (emphasis added to ¶ 3); O'Rean's Exhibit 2; Petition to Show Cause, 4/9/10, Exhibit A at 4.

## V. Gifts Within the IRC Annual Exclusion

We turn first to the gifts to Additional Respondents minus the two 2008 gifts of $5,000 and $330,000 to Adam. As noted, Chapter 56 of the Code addresses powers of attorney and was amended in 1999 to include the addition of § 5601.2, Special rules for gifts. Under the special rules for gifts, a principal may authorize an agent to make a limited gift as defined under section 5603(a)(2). "A limited gift, by statutory definition, is **one made to a restricted class of permissible donees for a value limited to the**

**annual exclusion from the federal gift tax permitted under the Internal Revenue Code**." ***Metcalf v. Pesock***, 885 A.2d 539, 541 (Pa. Super. 2005) (citing 20 Pa.C.S. § 5603(a)(2)) (emphasis added). Clearly, limited gifts are narrowly defined regarding class and value within the statute. Here, Latisha—not Decedent herself—signed each one of the gift checks. Moreover, Latisha signed each of the gift checks as Decedent's POA; otherwise, Latisha had no power or authority to sign them. Under the applicable POA document, however, Latisha's power to make such gifts was circumscribed in amount by the IRC, pursuant to the clear language of the relevant statutory provisions. Thus, the relevant question before the orphans' court was whether the checks Latisha signed were within the authority of the POA and whether they complied with the applicable statutory provisions.

The scope of authority under a POA is determined by the language of the document creating the agency and the Code. ***See generally*** 20 Pa.C.S. §§ 5601-5611; ***In re Weidner***, 938 A.2d at 357–358 (analyzing language of POA in the context of the Code to determine propriety of agent's actions). The POA signed by Decedent required that the agent "must use due care to act for your benefit and in accordance with this power of attorney." General Power of Attorney, 10/11/06, at 1 (Notice); O'Rean's Exhibit 2; Petition to Show Cause, 4/9/10, Exhibit A at 1. In the "Oath of Agent of a Power of Attorney," Latisha agreed to "exercise reasonable caution and prudence."

General Power of Attorney, 10/11/06, at 6; O'Rean's Exhibit 2; Petition to Show Cause, 4/9/10, Exhibit A at 6.  Moreover, the POA is the operative document that controls the outcome of this dispute.  As O'Rean asserted, it is axiomatic that in signing the gift checks, Latisha was acting either as a principal or as an agent.  As there is no evidence in the record suggesting that Latisha was a principal, such as being a co-owner of Decedent's Ameriprise account, we agree that she had to have been acting as an agent, thereby subject to the POA and the relevant Pennsylvania statutes.  O'Rean's Brief at 26.

This Court has construed 20 Pa.C.S. § 5601.2(a) narrowly.  **Metcalf**, 885 A.2d 539; **see also Barnett v. U.S.**, 2009 WL 2426246 (W.D. Pa. 2009) (not published in F.Supp.2d).  The stated purpose underlying section 5601.2 is to address the proper manner in which a principal may authorize an agent to make a gift under a power of attorney.  20 Pa.C.S. § 5601.2, Cmt.  The statute clearly provides that the power of an agent to make a gift as a power of attorney can occur only "as provided in this section [*e.g.*, Section 5601.2]."  20 Pa.C.S. § 5601.2(a).  Moreover, "powers of attorney are to be strictly construed."  **Estate of Slomski v. Thermoclad**, 956 A.2d 438, 444 (Pa. Super. 2008), *reversed on other grounds*, 987 A.2d 141 (Pa. 2009) (quoting **In re Estate of Cambest**, 756 A.2d 45, 52 (Pa. Super. 2000)).

There can be no dispute that Latisha executed each one of the gift checks. It also is evident that Latisha signed each of the gift checks as Decedent's POA. The orphans' court concluded that the checks listed in the stipulation that are within the IRC annual exclusion amount were valid gifts pursuant to Latisha's authority as Decedent's power of attorney. In terms of being within the IRC annual exclusion amount, this conclusion by the orphans' court must stand.

O'Rean argues, however, that the individual gifts to Kim, Sean, and Christy were not allowable because there was no evidence that these individuals had received gifts from Decedent prior to the effective date of the POA. O'Rean's Brief at 19. She also suggests that Additional Respondents reasonably could not have been considered by Latisha to be the natural objects of Decedent's bounty. We disagree.

In paragraph three, "power concerning gifts," of the POA document, Latisha's power to make gifts is circumscribed by the requirements of the Code, discussed *supra*, as well as the limitation that the gifts are "to, or for the benefit of, any donee who has been the recipient of gifts from me **or** whom my attorney reasonably considers to be the natural object of my bounty." General Power of Attorney, 10/11/06, at 4 (emphasis added). Thus, while there may be a dearth of testimony regarding Decedent's prior gift giving to Kim, Sean, and Christy, **see** O'Rean's Brief at 13, that does not end the matter. The POA document utilizes the word "or" in defining other

limitations on Latisha's gift-giving power. "We are bound to give 'or' its normal disjunctive meaning unless its ordinary meaning would 'produce a result that is absurd or impossible of execution or highly unreasonable . . . .'" ***Commonwealth ex rel. Specter v. Vignola***, 285 A.2d 869, 871 (Pa. 1971). Thus, the POA also permitted Latisha to give gifts that were within the IRC annual exclusion amount to a donee whom Latisha reasonably considered to be the natural object of Decedent's bounty.

O'Rean suggests Additional Respondents cannot be objects of Decedent's bounty because they were not named beneficiaries in Decedent's will. O'Rean's Brief at 13, 33. O'Rean's contention is not persuasive. First, the gift recipients' inclusion in Decedent's will is not controlling. Second, Decedent's will provided that if O'Rean did not survive Decedent, "O'Rean's share shall pass to [Latisha], or if she is not then living, to her then living issue, per *stirpes*." Will of Betty J. Fiedler, 10/11/06, at 1, O'Rean's Exhibit 3; N.T., 1/7/13, at 10. The will further provided that if Latisha did not survive her mother by thirty days, Latisha's share would pass to Latisha's issue, *per stirpes*, not to O'Rean, unless Latisha had no living issue. ***Id***. Clearly, Decedent's inclusion of Latisha's issue as secondary beneficiaries is indicative of the value Decedent placed on those relationships. It was not unreasonable for Latisha to draw an inference that Decedent similarly valued the relationships with the other Additional Respondents.

In ***In re Sturgeon's Estate***, 53 A.2d 139 (Pa. 1947), our Supreme Court noted that a decedent's **sister-in-law**, who was not included in the decedent's will, "might [have] be[en] regarded as natural objects of [the] decedent's bounty." ***Id***. at 140. Daughters-in-law were also determined to rightfully be included in the natural objects of bounty in ***Mermon v. Mermon***, 232, 390 A.2d 796, 798 (Pa. Super. 1978), and ***Northern Trust Co. v. Huber***, 118 A. 217 (Pa. 1922). In ***Hiester v. Hiester***, 77 A. 419 (Pa. 1910), although in the context of whether a resulting trust existed, our Supreme Court noted that a gift to a step-child or one related only by marriage fell within "other circumstances and other relations in life" that are noteworthy. ***Id***. at 419. As long ago as 1859, our Supreme Court made a point of suggesting the absurdity of an assumption that natural objects of one's bounty meant only heirs, as evidenced by the following:

> By natural objects of his bounty, we suppose is meant those collaterals who, had he died intestate, would have been his heirs; but not heirs by any natural law, but only by the positive institutions of the state--and as the point is expressed, distribution among them is almost assumed as a necessary test of competency. The doctrine of this point, like that of the second, which we have considered, would, if carried out, compel testators to give their estate to the same parties to whom the intestate laws would give it. They might perhaps alter the proportions of the distribution, but must not change the distributees. In other words, the old notion that if each child were not mentioned, though only to be cut off with a shilling, it was evidence of the testator's insanity, would be restored, and extended beyond its original limits, to collateral relatives--a failure to provide for whom by will, would be at least some evidence of incompetency. Propositions that lead logically to such results, ought not to be admitted. The radical error of this first point is, that it assumes that the testator meant distribution

- 22 -

of his estate, whereas the evidence, if it proved nothing else, established beyond a doubt that, after providing for his debts, his housekeeper, and his grave, he meant that his estate should go in a bulk to Grier [who was not in any way related to him].

***Stevenson's Ex'r v. Stevenson***, 33 Pa. 469, 472 (1859). Therefore, we reject O'Rean's suggestion that Decedent's step-grandson Sean and Decedent's granddaughters-in-law could not be considered natural objects of Decedent's bounty because they were not named in Decedent's will.

Moreover, there was testimony about a course of conduct at Christmas when the family would receive gift checks from Decedent. N.T., 1/7/13, at 114. Further, O'Rean herself testified that she wrote a gift check to Adam in July 2006 at Decedent's direction, thus lending support to the implication that Decedent was interested in passing on her bounty to subsequent generations. ***Id***. at 89–90.

As noted *supra*, O'Rean filed a motion *in limine* on June 22, 2012, seeking to preclude testimony of Additional Respondents and Latisha as irrelevant, at odds with ***Estate of Slomski v. Thermoclad***, 956 A.2d at 444 (Pa. Super. 2008), *reversed on other grounds*, 987 A.2d 141 (Pa. 2009), and as violative of the Pennsylvania Dead Man's Statute, 42 Pa.C.S. § 5930 ("Dead Man's Act"). The orphans' court denied the motion *in limine* on September 12, 2012. O'Rean challenges this ruling on appeal.

A motion *in limine* is used before trial to obtain a ruling on the admissibility of evidence. ***Northeast Fence & Iron Works, Inc. v. Murphy Quigley Co., Inc.***, 933 A.2d 664 (Pa. Super. 2007). "It gives the

trial judge the opportunity to weigh potentially prejudicial and harmful evidence before the trial occurs, thus preventing the evidence from ever reaching the jury." **Parr v. Ford Motor Co.**, 109 A.3d 682, 690 (Pa. Super. 2014), *appeal denied*, 123 A.3d 331 (Pa. 2015). A trial court's decision to grant a motion *in limine* "is subject to an evidentiary abuse of discretion standard of review." **Id**.

The orphans' court determined that **Slomski** did not control its decision; we similarly conclude that O'Rean's reliance on **Slomski** to preclude Additional Respondents' testimony is misplaced. **Slomski** did not address the issue of whether a power of attorney authorized the agent to make gifts on behalf of the principal or whether the principal ratified an agent's conduct in making such gifts. While both this Court and the Supreme Court in **Slomski** "address[ed] the interplay of the duties and responsibilities of an agent operating under a [POA]," Orphans' Court Opinion Denying Partial Summary Judgment, 8/31/11, at 5, the issue concerned whether an agent could change the beneficiary designation of a qualified retirement plan owned by the principal. Our Supreme Court held that a principal's POA granting the agent the power to engage in retirement plan transactions authorized his agent to change the beneficiary of the principal's retirement plan. **Slomski**, 987 A.2d at 141. The case is illustrative, not controlling.

O'Rean also challenged the testimony on the basis that Latisha and Additional Respondents were incompetent to testify based upon the Pennsylvania Dead Man's Statute, 42 Pa.C.S. § 5930 ("Dead Man's Act").[13] O'Rean's Brief at 5. "This statute is a reenactment of that portion of the Act of May 23, 1887 which, among other things, abolished the rule of incompetency for interested witnesses and created the rule of competency for witnesses in general." 1 West's Pa. Prac., Evidence § 601-7 (4th ed.) The statute is referred to as the "Dead Man's Rule", "Dead Man's Act", or "Dead Man's Statute." *Id*. The Comment to Pa.R.E. 601 recognizes that this ground of incompetency continues under Pa.R.E. 601(a). 1 West's Pa. Prac., Evidence § 601-7.

> The Dead Man's Act provides, in relevant part, as follows:
>
> Except as otherwise provided in this subchapter, in any civil action or proceeding, where any party to a thing or contract in action is dead, . . . and his right thereto or therein has passed . . . to a party on the record who represents his interest in the subject in controversy, neither any surviving or remaining party to such thing or contract, nor any other person whose interest shall be adverse to the said right of such deceased . . . , shall be a competent witness to any matter occurring before the death of said party . . . .

42 Pa.C.S. § 5930. "The rationale behind the Dead Man's Act is that the law should not permit the surviving party to testify since he could lie and attempt to testify favorably to himself and adversely to the deceased party,

---

[13] We address this challenge regarding Latisha in Section VI, *infra*.

knowing the other party is incapable of contradicting the fallacious testimony." ***Punxsutawney Mun. Airport Authority v. Lellock***, 745 A.2d 666, 670 (Pa. Super. 2000). The Dead Man's Act is an exception to the general rule of evidence in this Commonwealth that "no interest or policy of law . . . shall make any person incompetent as a witness." ***Larkin v. Metz***, 580 A.2d 1150, 1152 (Pa. Super. 1990) (citing 42 Pa.C.S. § 5921).

> Under the Dead Man's Act three conditions must exist before the surviving party or witness is disqualified: "(1) the deceased must have had an actual right or interest in the matter at issue, *i.e.* an interest in the immediate result of the suit; (2) the interest of the witness-not simply the testimony-must be adverse; (3) a right of the deceased must have passed to a party of record who represents the deceased's interest." ***In Re Hendrickson's Estate***, 388 Pa. 39, 45, 130 A.2d 143, 146-47 (1957); ***Weschler v. Carroll***, [578 A.2d 13 (Pa. Super. 1990)].

***Larkin***, 580 A.2d at 1152.

The testimony of the Additional Respondents was as follows: Sean, who was forty years old at the time of the hearing, testified that he knew Decedent since he was eleven years old, and he thought of her as his grandmother. N.T., 1/9/13, at 185, 186. Sean's wife, Christy, age thirty-six, testified that she knew Decedent since she was ten years old because her brother was good friends with Adam. *Id.* at 179–180. Christy further testified that she had a grandparent-grandchild relationship with Decedent since Christy married Sean fourteen years ago. *Id.* at 180. Adam's wife, Kim, thirty-eight years old, testified that she knew Decedent from the time Kim was a teenager, she thought of Decedent as her grandmother, and she

called Decedent "Mimi Betty." *Id.* at 190, 192. All of the witnesses testified that Decedent handed out envelopes containing checks at Christmas gatherings. *Id.* at 179–192.

Regarding the application of the Dead Man's Act to preclude this testimony, the orphans' court stated as follows:

> The [c]ourt finds that each gift recipient was competent to testify as a third party witness under the Dead Man's Statute, to the gifts given to the other recipients at the holiday gatherings. For example, Adam Buckius was competent to testify as to the envelopes he saw Decedent give to Sean Bitts, Christy Bitts and Kim Buckius.

Orphans' Court Adjudication, 12/4/13, at 7 n.3. We agree that Additional Respondents could testify about their relationships with Decedent and as non-adverse witnesses under the Dead Man's Act regarding their observations concerning the gifts given to the other recipients.

O'Rean's final challenge to the testimony of Additional Respondents and Latisha was that the testimony was irrelevant. The orphans' court rejected this basis for exclusion, as well; thus, we consider the orphans' court's evidentiary ruling.

> "[I]t is well settled that the admissibility of evidence is a determination left to the sound discretion of the trial court, and it will not be overturned absent an abuse of discretion or misapplication of law." *Knowles v. Levan*, 15 A.3d 504, 507 (Pa. Super. 2011) (quoting *Reott v. Asia Trend, Inc.*, 7 A.3d 830, 839 (Pa. Super. 2010)). For a ruling on the admissibility of evidence to constitute reversible error, it must have been harmful or prejudicial to the complaining party. *Id*.

*Koller Concrete v. Tube City*, 115 A.3d 312, 316 (Pa. Super. 2015). "To the degree the issue of whether the law has been misapplied involves a purely legal question, it is reviewed *de novo*." *Brady v. William M. Urbas, D.P.M.*, 111 A.3d 1155, 1161 (Pa. 2015).

We have no hesitation in concluding, as did the orphans' court, that the evidence was relevant and that Latisha fairly and reasonably could have determined that Additional Respondents could be considered "the natural object of [Decedent's] bounty." General Power of Attorney, 10/11/06, at 4; O'Rean's Exhibit 2; Petition to Show Cause, 4/9/10, Exhibit A at 4. The orphans' court stated:

> [Latisha] was entitled and given the power to provide these limited gifts. [O'Rean], when serving as Agent, made gifts to Adam Buckius. Furthermore, [O'Rean] testified that Decedent herself gave gifts to [Latisha] and [O'Rean]. Adam Buckius was married to Kim Buckius and together they had two children, Lydia and Emma. The Buckius family [is], quite obviously, the natural bounty of Decedent as they are her grandson, granddaughter-in-law and great grandchildren. Sean Bitts, [Latisha's] step-son, and Christy Bitts, Sean's wife and [Latisha's] step-daughter-in-law, testified that they called Decedent "Mimi Betty" and gathered with Decedent at Christmas family gatherings. Furthermore, the testimony demonstrated that the Decedent delivered the gifts at holiday gatherings. The [c]ourt finds that Sean Bitts, Christy Bitts, Adam Buckius, Kim Buckius, Lydia and Emma as well as [Latisha] herself, were the natural object of Decedent's bounty and could be recipients of limited gifts under the Power of Attorney.

Orphans' Court Opinion, 12/4/13, at 7. Following our complete review of the record and applicable law, we agree with the orphans' court that the gifts within the IRC annual exclusion were valid and permissible.

### VI. Gifts Outside the IRC Annual Exclusion

O'Rean also assails the orphans' court's decision upholding Latisha's gifts to Adam in the amount of $330,000 on October 1, 2008, and $5,000 on April 29, 2008, that were beyond the IRC annual exclusion amount. Referencing the Code and the POA document, O'Rean asserts that if the orphans' court had followed the applicable statutory language and the clear, unambiguous limited gifting language in the POA, in conjunction with the stipulations of counsel, it would have disallowed the two 2008 gifts to Adam totaling $335,000 because they exceeded the $12,000 IRC annual exclusion amount. In addition, as noted *supra*, O'Rean challenged the testimony on the basis that Latisha was incompetent to testify based upon the Dead Man's Act. We are compelled to agree.

Regarding the gifts to Adam that exceeded the annual exclusion amount, the orphans' court completely ignored the language of the POA document. The orphans' court upheld the $5,000 check to Adam in 2008 as a valid gift, despite acknowledging that the stipulation of counsel identified it as in excess of the annual gift tax exclusion. The court's reliance on Latisha's self-serving testimony that "Decedent directed her to write the check to Adam," Orphans' Court Opinion, 12/4/13, at 16, does not elevate the gift outside of the parameter of the limited gift-giving power of the POA document, nor eliminate the applicability of the special rules for gifts as set forth in 20 Pa.C.S. § 5601.2. Because the stipulation and testimony

established that Latisha had gifted Adam $12,000 on January 1, 2008, the $5,000 check was in excess of the annual gift tax exclusion and is subject to return.

The same is true of the $330,000 check to Adam in 2008. In upholding the gift, the orphans' court supported its decision with its determination that "[s]ince Decedent delivered[, i.e., handed out, this] gift[], Latisha was not acting under her authority outlined in the Power of Attorney." Orphans' Court Opinion, 12/4/13, at 17. That reasoning is unsupported both by the orphans' court and the record. The consistent testimony was that Decedent handed out the gift checks to everyone, not just to Adam. N.T., 1/7/13, at 113–117; N.T., 1/9/13, at 182–183, 186–189. The decisive point, however, is that it was a check signed by Latisha as Decedent's POA, and it did not comply with the gifting authority of the POA because the gift exceeded the annual IRC exclusion amount. The orphans' court also concluded, without any support, that the gift was not subject to analysis under 20 Pa.C.S. § 5601.2. Orphans' Court Opinion, 12/4/13, at 17. The orphans' court clearly and properly utilized the POA document and 20 Pa.C.S. § 5601.2 to uphold the gifts within the annual exclusion amount that related to Additional Respondents, but then erroneously ignored the very same POA and statutory provisions regarding the 2008 gift to Adam.

Latisha also offered testimony that Decedent intended to gift Adam $330,000 because Decedent "wanted to help [Adam] buy a house or buy a

house for [him]." N.T., 1/7/13, at 124. Even though our decision today does not turn on Latisha's testimony regarding Decedent's wishes because Latisha was constrained by the authority granted to her in the POA document, we address this testimony for the sake of completeness. In doing so, we identify several problems with such testimony.

First, Latisha's testimony does not clearly state Decedent's intent to give such a large check to Adam; rather, it is a self-serving statement by Latisha. Furthermore, an argument may be made that the Dead Man's Act precluded Latisha's testimony regarding Decedent's wishes. Without such testimony, we are left with the testimony of Gregory Nauman. While Mr. Nauman[14] originally stated on direct examination that Decedent wanted to make the gift to Adam, on cross-examination, he stated that his

_____

[14] The issue of preclusion of Mr. Nauman's testimony under the Dead Man's Act also arose at the hearing. N.T., 1/7/13, at 22. The Dead Man's Statute renders the testimony of a party with an interest in the outcome of the litigation, which is adverse to that of the decedent, incompetent. 42 Pa.C.S. § 5930; *Larkin*, 580 A.2d at 1152. Those without a direct and immediate adverse interest in the outcome remain competent to testify to events preceding the decedent's death. O'Rean maintains that the orphans' court erred and abused its discretion when it found Mr. Nauman to be a disinterested witness. We agree that the orphans' court properly determined that Mr. Nauman's testimony was not precluded by the Dead Man's Act. Orphans' Court Adjudication, 3/3/14, at 12–13.

"understanding was that **Latisha Bitts** wanted to make a gift to Adam. That is what I was told." N.T., 1/7/13, at 47 (emphasis added).[15]

Also, the method of withdrawing the funds from the Ameriprise account was unconventional and does not reflect a direct gift from Decedent to Adam. Mr. Nauman testified that in generating the Ameriprise form for cash withdrawal for the purpose of making the gift to Adam, he partially filled out the form before taking it to Decedent **based on direction from Latisha**. N.T., 1/7/13, at 48. Mr. Nauman testified, "I was told probably by [Latisha] that she wanted to make a withdrawal, make a gift. So I had the form ready when I went to see [Decedent]." N.T., 1/7/13, at 48–49. His

_____

[15] Latisha suggests that this testimony is a "transcript error." Latisha's Brief at 18. At reargument, she referred us to the Reproduced Record ("R.R.") at 192a where Latisha, in a reply brief filed in the trial court on May 6, 2013, stated, "[Latisha] believes" that Mr. Nauman's testimony was an error." The brief then references an e-mail from Mr. Nauman stating that he had received Latisha's counsel's "letter requesting clarification," and his statement that he "should have said, 'My understanding was that [Decedent] wanted to make a gift to Adam.'" R.R. at 199a. Despite Latisha's claim in the May 6, 2013 brief that she "intends to move to correct the transcript," R.R. at 193a, we note that Latisha has not referenced the certified record with such a motion to correct the record. While the general rule is that this Court generally may consider facts only if they are duly certified in the record, **Commonwealth v. Young**, 317 A.2d 258, 264 (Pa. 1974), we recently acknowledged that "where the accuracy of a pertinent document is undisputed, the Court could consider that document if it was in the Reproduced Record, even though it was not in the record that had been transmitted to the Court." **WMI Grp., Inc. v. Fox**, 109 A.3d 740, 744 n.5 (Pa. Super. 2015) (citing Pa.R.A.P. 1921). Here, the accuracy of Mr. Nauman's testimony as contained in the certified transcript is disputed; thus, **Fox** does not persuade us to consider Latisha's reference to the reproduced record.

testimony was consistent: "[Latisha] called [him] and told [him] that there should be a liquidation done in order to have a check sent or given to [Adam]." *Id*. at 54. Instead, however, the funds were deposited into the POA account, and one month later, Latisha wrote a check to Adam in the amount of $330,000. The Ameriprise Redemption Form makes no mention of any amount of gift to be made to Adam. N.T., 1/7/13, at 53. Additionally, Mr. Nauman testified that on the Ameriprise Redemption Form, he checked the "No" box in answer to the question, "[I]s this transaction based on a recommendation by an Ameriprise Financial advisor." *Id*. at 37–38. He opined that the transaction should have been handled differently. *Id*. at 52, 59. Therefore, even if Decedent directed that funds be liquidated, she did not directly give the funds to Adam. Once the funds were under the control of Latisha, she was bound by the constraints of her agency, and Decedent's intent was no longer controlling.

In summary, we hold that when a designated POA agent writes gift checks from a principal's account, the agent is constrained by the gift-giving limitations listed in the POA document and the statutory requirements of the Code. There is nothing about the gifts to Adam in this case to differentiate them from any of the other gift checks written and signed by Latisha. As such, the $330,000 check and the $5,000 check were subject to the authority of the POA and the statutory requirements of the Code. They are

beyond the IRC annual gift tax exclusion, as evidenced by counsels' stipulation; thus, they are not valid.

## VII. Latisha's Cross Appeal

In her cross appeal, Latisha assails the orphans' court's surcharge to her of $25,200, which represented two checks Latisha wrote to herself in 2007, one for $25,100 and one for $100. The orphans' court correctly concluded that since Latisha previously wrote a check to herself for $12,000 in 2007, which was within "the limited gifting power outlined in Decedent's Power of Attorney," the other gifts were "not valid." Orphans' Court Opinion, 12/4/13, at 17. There is nothing in the record that can validly remove these two checks from the applicable language of the POA document and the relevant statutes. The same reasoning applicable to the $335,000 in gifts to Adam applies to the $25,200 in checks to Latisha.

Finally, Latisha challenged the orphans' court's conclusion that her payment of $7,674 to cover funeral costs should be returned to Decedent's estate. Latisha contends that O'Rean had withdrawn her objection to the payment of funeral expenses. While it is true that O'Rean initially testified that she did not object to Latisha's payment of funeral expenses, she later clarified that she indeed objected to their payment. N.T., 1/7/13, at 92; N.T., 1/9/13, at 256. The orphans' court properly relied upon O'Rean's clarification. Orphans' Court Opinion, 12/4/13, at 18.

Latisha suggests that because the Ameriprise account was titled "TOD," and she, along with O'Rean, "split any assets in the account following death," Latisha's Panel Brief at 41, as fifty percent owner of the account, Latisha had a right to pay Decedent's funeral expenses. **Id**. We reject this claim. The orphans' court's determination was correct based on the evidentiary record. We do not agree that the record conclusively established Latisha's lawful right to draw checks on the account. As the orphans' court stated, when she paid the funeral expenses, Latisha "was no longer authorized to make withdrawals after her mother's death." Orphans' Court Opinion, 12/4/13, at 18. Latisha's authority as agent under the POA expired upon her mother's death. General Power of Attorney, 10/11/06, at 1 (NOTICE); O'Rean's Exhibit 2; Petition to Show Cause, 4/9/10, Exhibit A at 1. However, also as noted by the orphans' court, "The payment of funeral expenses is a legitimate expense of an Estate[,] and the [c]ourt, in this ruling, in no way bars [Latisha] from requesting and being reimbursed for this cost from the Estate." Orphans' Court Opinion, 12/4/13, at 18 n.5. Latisha's challenge has no merit.

Therefore, for the aforementioned reasons, we affirm the validity of the gifts that were within the annual gift tax exclusion amount and affirm the surcharge to Latisha Bitts for gifts of $25,200 and funeral costs of $7,674, totaling $32,874. In addition, we reverse the orphans' court's decision that the gifts of $330,000 and $5,000 to Adam Buckius were not

subject to return, and order the repayment of $335,000.00 to Decedent's estate. We remand to the orphans' court to direct the return of said gifts and funeral costs to Decedent's estate.[16] Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/5/2016

---

[16] In the absence of any particularized argument regarding interest, we affirm the orphans' court's denial of interest. Orphans' Court Opinion, 12/4/13, at 19.