J-S48029-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: ESTATE OF DENNIS SMITH, DECEASED | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| APPEAL OF: JEANETTE SHIRES | No. 280 MDA 2017 |

Appeal from the Order Entered January 10, 2017
In the Court of Common Pleas of Lycoming County
Orphans' Court at No: 41-16-0105

BEFORE:  OTT, STABILE, and PLATT,[*] JJ.

MEMORANDUM BY STABILE, J.:                    **FILED NOVEMBER 09, 2017**

Appellant, Jeanette Shires, appeals from the January 10, 2017 orphans' court order denying her request for letters of administration of the estate of Dennis Smith ("Decedent").  We affirm.

Decedent died intestate on January 31, 2016.  The orphans' court appointed an administrator, subsequent to which Appellant, on March 23, 2016, filed a caveat in which she requested letters of administration as the Decedent's surviving spouse.  The orphans' court conducted two days of hearings, on July 15, 2016 and August 19, 2016.  The orphans' court denied relief by order of January 10, 2017.  Appellant filed this timely appeal on

_____

[*] Retired Senior Judge assigned to the Superior Court.

J-S48029-17

February 9, 2017.[1]  Appellant raises one issue:  "Whether the [orphans']

court erred as a matter of law in failing to find [Appellant] to be the common

law wife of [Decedent], when evidence of *verba in praesenti* was presented

and not contested by the Estate?"  Appellant's Brief at 4.

The applicable standard of review requires this court to be

"deferential" to an orphans' court's findings.  ***In re Fielder***, 132 A.3d 1010,

1018 (Pa. Super. 2016), ***appeal denied***, 145 A.3d 66 (Pa. 2016).

> [T]this Court must determine whether the record is free
> from legal error and the court's factual findings are supported by
> the evidence.  Because the [o]rphans' [c]ourt sits as the fact-
> finder, it determines the credibility of the witnesses and, on
> review, we will not reverse its credibility determinations absent
> an abuse of that discretion.

***Id.***  "The [o]rphans' [c]ourt decision will not be reversed unless there has

been an abuse of discretion or a fundamental error in applying the correct

principles of law."  ***Id.***

Our Supreme Court addressed the doctrine of common law marriage in

***Staudenmayer v. Staudenmayer***, 714 A.2d 1016 (Pa. 1998) (plurality).[2]

_____

[1]  We exercise jurisdiction pursuant to Pa.R.A.P. 342(a)(5) ("An appeal may
be taken as of right from the following orders of the [o]rphans' [c]ourt
Division:  […]  An order determining the status of fiduciaries, beneficiaries,
or creditors in an estate[.]")

[2]  Six justices participated in ***Staudenmayer***.  Justice Newman authored the
majority opinion, joined by Chief Justice Flaherty and then-Justice Cappy.
Justice Nigro, joined by then-Justice Castille, authored a concurring opinion.
Justice Nigro wrote:  "I concur in the Majority Opinion.  However, I would go
one step further and advocate the abolition of common law marriage in this
*(Footnote Continued Next Page)*

- 2 -

Marriage in Pennsylvania is a civil contract by which a man and a woman take each other for husband and wife. There are two kinds of marriage: (1) ceremonial; and (2) common law. A ceremonial marriage is a wedding or marriage performed by a religious or civil authority with the usual or customary ceremony or formalities.

Because claims for the existence of a marriage in the absence of a certified ceremonial marriage present a fruitful source of perjury and fraud, Pennsylvania courts have long viewed such claims with hostility. Common law marriages are tolerated, but not encouraged. While we do not today abolish common law marriages in Pennsylvania, we reaffirm that claims for this type of marriage are disfavored.

*Id.* at 1019–20 (internal citations and quotation marks omitted).

Common law marriages must be created by *verba in praesenti*, that is, "an exchange of words in the present tense, spoken with the specific purpose that the legal relationship of husband and wife is created by that." *Id.* at 1020. No specific form of words is required. *Id.* Absent evidence of *verba in praesenti*, the proponent of the common law marriage may enjoy a rebuttable presumption upon proof of "(1) constant cohabitation; and, (2) a reputation of marriage which is not partial or divided but is broad and general." *Id.* Proofs concerning the rebuttable presumption become necessary where one party to the marriage is deceased. In that case, direct

(Footnote Continued) ————————————

Commonwealth[.]" ***Staudenmayer***, 714 A.2d at 1022 (Nigro, J. concurring). Then-Justice Zappala concurred in the result only. Thus, it appears that five Justices supported the rationale of Justice Newman's majority opinion. We observe that our General Assembly abolished common law marriages contracted after January 1, 2005. 23 Pa.C.S.A. § 1103.

- 3 -

testimony of *verba in praesenti* is unavailable because the Dead Man's Act[3] prohibits the surviving spouse from putting words in the mouth of the deceased. *Id.* at 1021.

Instantly, Appellant testified as to the *verba in praesenti* between she and Decedent without objection from the Appellee Estate (the "Estate"). In Appellant's view, the Estate's failure to object under the Dead Man's Act renders her testimony of *verba in praesenti* uncontested. She therefore argues that the orphans' court erred in denying her request for letters of administration as the surviving spouse. Appellant's Brief at 11-12.

The orphans' court summarized Appellant's testimony as follows:

> [Appellant] testified that Decedent was her husband. They began dating in 1974 and Decedent moved in with her in 1987 (i.e. twenty-nine years ago). She testified that shortly thereafter, he paid for a ring for her and she bought him a ring and when they exchanged rings, he said 'forever.' She also testified that Decedent told her that they were just as married as any other couple but did not have the paper that said it.
>
> [Appellant] went on to testify regarding Decedent's involvement with her family life, including walking her niece down the aisle and dancing the father daughter dance with her niece at the wedding. [Appellant] testified that she called Decedent 'sweetie' and 'significant other.' She testified that they did not spend time with his family, that in fact he had never introduced her to his family.
>
> […]
>
> [Appellant] was unable to testify to an exact date that the rings were exchanged, however, and she did not produce the

---

[3] *See* 42 Pa.C.S.A. § 5930.

ring or Decedent's ring at either hearing. [Appellant] submitted only one exhibit, an invitation to a wedding in 2006 that was addressed to 'Mr. and Mrs. Denny Smith' [at the address of the couple's alleged cohabitation]. Further, [Appellant] admitted that she and Decedent held no joint bank accounts. She testified that Decedent gave her money 'for the light bill, the fuel bill, and if I needed help on something else he would help me with that, too.' Finally, she testified that they both had vehicles titled solely in their own names.

Orphans' Court Opinion, 1/10/17, at 1-2, 11-12.

The orphans' court also noted that the Estate introduced emergency clinic records on which the Decedent identified his younger sister as his next of kin. *Id.* at 12. Decedent's younger sister was listed as the beneficiary on his life insurance policy. On other emergency clinic records, the Decedent listed Appellant as his next of kin but described her as a friend, and he did not list the address of their alleged cohabitation as his home address. *Id.* Decedent's tax returns identified him as single and did not list the address of alleged cohabitation. *Id.* Appellant does not dispute these facts.

The parties and the orphans' court relied heavily on **Staudenmayer**, and we agree that **Staudenmayer** is on point and controlling. **Staudenmayer**, like the instant matter, involved a claim of *verba in praesenti* rather than the rebuttable presumption of marriage. **Staudenmayer** was an equitable distribution case in which the wife alleged that the couple contracted a common law marriage in 1978 prior to their civil ceremony in 1984. In dispute were assets that the husband acquired prior to the civil marriage but subsequent to the alleged common law marriage.

***Staudenmayer***, 714 A.2d at 1018.  The wife testified that the couple had a joint checking account in 1978, that they owned a home as tenants by the entirety in 1978, and that they began filing joint tax returns in 1978.  ***Id.***  In prior child support paper work, however, the wife identified herself as not married as of the birth of the couple's daughter, and she specified that the couple's marriage occurred in December of 1985, one year **after** the civil ceremony.  Wife was unable to recall the exact moment when she and her husband said to each other that they were husband and wife, and wife could not explain why the civil ceremony in 1984 was necessary if the couple was already married.  ***Id.***  at 1022.

The Supreme Court noted that the party alleging *verba in praesenti* must establish by clear and convincing evidence that the couple exchanged words "in the present tense with the purpose of establishing the relationship of husband and wife, in other words, a marriage contract."  ***Id.*** at 1021.  The Supreme Court also recognized the orphans' court's authority to determine the credibility of witnesses.  ***Id.*** at 1022.  Given the contradiction between the wife's testimony and her representations in earlier paper work that she and her husband were not married as of the birth of their daughter, the Supreme Court concluded that the wife failed to produce clear and convincing evidence to meet her heavy burden of establishing a common law marriage.  ***Id.*** at 1022.

The Supreme Court's analysis in **Staudenmayer** illustrates the flaw in Appellant's argument. The proponent of a common law marriage cannot prevail simply by giving his or her own account of the alleged *verba in praesenti*. Rather, the proponent's account must be clear and convincing, and credible in the eyes of the orphans' court. The proponent failed in **Staudenmayer** because her account of the couple's marriage contract was vague, and because other evidence did not support her testimony. Indeed, her claim failed even though, as of the date of the alleged common law marriage, the couple owned joint bank accounts, filed joint tax returns, owned a home together, and shared a surname.

Appellant's case is considerably weaker. She alleged that the couple exchanged rings and said "forever," but she was unable to produce either ring. She also could not identify the date of the alleged marriage, other than to say it occurred in 1987. The Decedent filed single tax returns, and his tax returns and medical records did not identify the address of alleged cohabitation. The couple did not own a home or joint bank accounts, nor did Appellant take the Decedent's surname. Various exhibits indicate that Decedent consistently identified Appellant as a friend rather than a spouse or significant other. Appellant admitted that Decedent never introduced her to his family. All of the foregoing undermines Appellant's claim of common law marriage, regardless of the Estate's failure to lodge an objection under the Dead Man's Act. We therefore conclude the orphans' court acted within its

permissible discretion in finding that Appellant did not produce clear and convincing evidence in support of her account of *verba in praesenti*. Because Appellant offered evidence of *verba in praesenti*, we do not consider whether the presumption of marriage applies. ***Staudenmayer***, 714 A.2d at 1021. Appellant was not entitled to letters of administration as Decedent's surviving spouse.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/9/2017