J-A19027-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ESTATE OF FRANCES M. SORIUS, DECEASED | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: JOSEPH FAY & MATTHEW SHAY, OBJECTANTS | : : : : : | |
| | : | No. 3659 EDA 2016 |

Appeal from the Order November 10, 2016
In the Court of Common Pleas of Philadelphia County
Orphans' Court at No.: No. 1572 IV of 2012

BEFORE: BENDER, P.J.E., DUBOW, J., and MUSMANNO, J.

MEMORANDUM BY DUBOW, J.:           **FILED SEPTEMBER 07, 2017**

Joseph Fay and Matthew Shay ("Appellants") appeal from the Order entered in the Court of Common Pleas of Philadelphia County Orphans' Court on November 10, 2016, which denied their objections to the first and partial accounting of the Estate of Frances M. Sorius ("the Estate") and the 1998 Frances M. Sorius Living Trust ("1998 Trust"). After careful review, we affirm on the basis of the trial court's March 28, 2017 Opinion.

We adopt the facts as set forth in the trial court's March 28, 2017 Pa.R.A.P. 1925(a) Opinion. *See* Trial Court Opinion, filed 3/28/17, at 2-7. In summary, the decedent, Frances M. Sorius ("Sorius"), created a Trust on February 23, 1998 ("1998 Trust"). On the same date, Sorius created a Will ("1998 Will"). On December 11, 2002, Sorius created a second Trust ("2002 Trust"), which did not alter, amend, rescind, or reference the prior 1998 Trust.

In 2007, Sorius hired Stephen H. Green, Esquire ("Attorney Green") to make changes to her estate planning documents. Sorius provided a copy of the 1998 Will, the 1998 Trust, and written instructions regarding her desired changes. Sorius did not provide Attorney Green with a copy of the 2002 Trust. Following Sorius' written instructions, Attorney Green prepared a Codicil to Sorius' 1998 Will, a power of attorney, and Amendments to the 1998 Trust.[1] Sorius reviewed all of the estate planning documents before executing them with Attorney Green. Sorius continued to manage the Trusts separately. According to the trial court, there were "[n]o allegations of undue influence, lack of capacity, testamentary or otherwise, confidential relationship[,] or duress . . . with respect to [] Sorius' actions." Trial Court Opinion at 4.

Sorius died testate on November 29, 2010. Sorius' Will and Codicil were admitted to probate, and Attorney Green was appointed Executor of the Estate and became Trustee of the 1998 Trust.[2] Attorney Green transferred and retitled some of the assets held by the 2002 Trust to the

---

[1] Sorius' 2007 Amendments to the 1998 Trust removed Sandra Hagerty and Robert Soris, Sorius' niece and nephew respectively, as residuary beneficiaries, included Appellants, self-described caretaking friends of Sorius, and Attorney Green among new residuary beneficiaries, provided conditional bequests to Appellants, among others, and mentioned specific items that were not included in the 1998 Trust at that time.

[2] Hagerty and Soris were Trustees and residuary beneficiaries of the 2002 Trust.

1998 Trust, including a checking account, Abington Bancorp stock, a Merrill Lynch account, and Vanguard shares.

Attorney Green filed the first and partial accounting of the 1998 Trust and the Estate on December 24, 2012. Appellants, through counsel, filed objections claiming, *inter alia*, that Sorius intended the 2007 Amendments to apply to both the 1998 Trust and the 2002 Trust. Appellants argued that all of Sorius' assets should be included in the 1998 Trust and distributed accordingly. Attorney Green took no position regarding the allocation of assets and expenses between the two Trusts, or the effect of the 2007 Amendments, *i.e.*, whether the 2007 Amendments applied to both Trusts or only the 1998 Trust.

Hagerty and Soris also filed Objections, asserting that Attorney Green improperly commingled assets from the 1998 Trust, the 2002 Trust, and the Estate, and failed to allocate assets properly. Following a trial on November 5, 2014, the trial court held the matters under advisement and ordered briefing on several issues.

On June 30, 2016, the trial court issued Adjudications regarding the Trustee's Account and the Executor's Account. Relevant to this appeal, the trial court concluded that the 2007 Amendments only applied to the 1998 Trust and that Appellants had failed to show by clear and convincing evidence that Sorius made a mistake with the 2007 Amendments. Thus, the trial court refused to reform the unambiguous 2007 Amendments to apply to

the entire estate plan. The trial court also ordered Attorney Green to rectify and reverse his improper transfers of assets.[3] The trial court denied Appellants' Objections to the Adjudication of the 1998 Trust Account and the Estate Account on November 10, 2016.

Appellants filed a timely Notice of Appeal. Appellants and the trial court complied with Pa.R.A.P. 1925.

Appellants present three interrelated issues for our review:

1. Where there is clear and convincing evidence of a mistake that affects the decedent's intent as expressed in certain amendments to a trust instrument, should the court reform the amendments pursuant to 20 Pa.C.S.[] § 7740.5 even if the amendments are clear on their face and contain no ambiguities?

2. Where the evidence demonstrates the decedent and her scrivener–attorney confused the composition of both decedent's personally held property and the property held by two trusts previously created by decedent, is there clear and convincing evidence that both decedent and the scrivener made a mistake sufficient to require reformation pursuant to 20 Pa.C.S.[] § 7740.5?

3. Where the evidence shows the decedent's clear intent was to devise certain assets to Appellants, should the Court ensure that her intent is followed by reformation of the amendments?

Appellants' Brief at 4.

_____

[3] Notably, the trial court concluded that Attorney Green acted as Trustee *de son tort* of the 2002 Trust. Derived from Law French, a trustee *de son tort* is "[s]omeone who, without legal authority, administers a living person's property to the detriment of the property owner." Black's Law Dictionary (10th ed. 2014). The phrase *de son tort* is also and more commonly used in Pennsylvania case law when referring to executors *de son tort* and appears in published cases by our Supreme Court dating back to at least 1821. **See Nass v. Vanswearingen**, 7 Serg. & Rawle 192 (Pa. 1821).

"When reviewing a decree entered by the Orphans' Court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence." *In re Fiedler*, 132 A.3d 1010, 1018 (Pa. Super. 2016) (citations and quotation omitted). "Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion." *Id.* (citation and quotation omitted). However, we are not required to give the same deference to any resulting legal conclusions. *Id.* "The Orphans' Court decision will not be reversed unless there has been an abuse of discretion or a fundamental error in applying the correct principles of law." *Id.* (citation and quotation marks omitted).

Appellant's issues raise questions of law regarding the reformation of mistakes in a trust instrument. This Court's standard of review of questions of law is *de novo,* and the scope of review is plenary; thus, we review the entire record in making our determination. *Id.*

"[A] claim against a decedent's estate can be established and proved only by evidence which is clear, direct, precise[,] and convincing." *Estate of Allen*, 412 A.2d 833, 836 (Pa. 1980) (citation and quotation marks omitted). "The court may reform a trust instrument, even if unambiguous, to conform to the settlor's probable intention if it is proved by clear and convincing evidence that the settlor's intent as expressed in the trust

instrument was affected by a mistake of fact or law, whether in expression or inducement." 20 Pa.C.S. § 7740.5 (entitled "Reformation to correct mistakes"). "The court may provide that the modification have retroactive effect." *Id.*

The Honorable Matthew D. Carrafiello has authored a comprehensive, thorough, and well-reasoned Pa.R.A.P. 1925(a) Opinion, with references to relevant facts of record and to relevant case law. The record is free of legal error and the evidence supports the court's factual findings. After a careful review of the parties' arguments and the record, we discern no abuse of discretion or error of law and we affirm on the basis of that Opinion. *See* Trial Court Opinion, filed 3/28/17, at 10-23 (concluding: (1) Sorius' unambiguous 2007 Amendments applied only to the 1998 Trust because, *inter alia*, the document was "distinctly titled as amendments to the 1998 Trust in bold letters[;]" (2) Appellants failed to prove a mistake of fact or law under 20 Pa.C.S. § 7740.5 by clear and convincing evidence because Sorius, an astute woman with diversified assets and investments, managed each Trust account by moving property and funds into and out of each Trust, including after the 2007 Amendments; (3) Attorney Green's testimony that he did not know about the 2002 Trust until after Sorius' death "was not credible based on his involvement with transfer of title to the real estate in 2008 and his actions as agent under power of attorney[;]" (4) reforming the 2007 Amendment to apply also to the 2002 Trust would effectively remove

- 6 -

Sorius' niece and nephew as residuary beneficiaries of the 2002 Trust and change Sorius' entire estate plan, which the trial court determined would be inconsistent with Sorius' intent; and (5) Appellants thus failed to meet their burden to prove a mistake by clear and convincing evidence).

The parties are directed to attach a copy of the trial court's March 28, 2017 Pa.R.A.P. 1925(a) Opinion to all future filings.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/7/2017

# COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
## ORPHANS' COURT DIVISION

O.C. No. 1572 IV of 2012
Control # 123996

### FRANCES M. SORIUS, Inter Vivos Trust

### <u>OPINION SUR APPEAL</u>

Joseph Fay and Matthew Shay (hereinafter referred to as "Appellants") appeal the Trial Court's Adjudication dated June 30, 2016 of the First and Partial Account of Stephen Green, Trustee of The Frances M. Sorius Living Trust dated February 23, 1998, as amended by trust amendments dated September 5, 2007 and October 18, 2007 (hereinafter referred to as the "2007 Amendments").

Specifically, Appellants appeal the Trial Court's determinations that the 2007 Amendments amended only The Frances M. Sorius Living Trust dated February 23, 1998 (hereinafter referred to as the "1998 Trust") and not the Settlor's entire estate plan, and further that Appellants failed to prove by clear and convincing evidence that the Settlor's intent, as expressed in the 2007 Amendments, was affected by mistake of fact or law by the Settlor and her attorney/scrivener thus requiring reformation under 20 Pa. C.S. Section 7740.5.

Frances M Sorius, Intervivos Trust



20120157207078

1b

## FACTS

The Settlor, Frances M. Sorius (hereinafter referred to as "Mrs. Sorius") created the 1998 Trust on February 23, 1998.[1] She and her husband, Anthony Sorius, served jointly as trustees until his death in 2002[2], at which time she remained the sole trustee.

In addition to the 1998 Trust, Mrs. Sorius created a Will dated February 23, 1998, and named her husband as her personal representative. Under Article Two, Section 1. Pour-Over to My Living Trust, she directed:

> All of my property of whatever nature and kind, wherever situated, shall be distributed to my revocable living trust. The name of my trust is: Frances M. Sorius and Anthony Sorius, Trustees, or their successors in trust, under The Frances M. Sorius Living Trust dated February 23, 1998 and any amendments thereto.[3]

After her husband's death, Mrs. Sorius created a second inter vivos trust, the Frances M. Sorius Living Trust dated December 11, 2002 (hereinafter referred to as the "2002 Trust"), and named herself as the sole trustee.[4] The 2002 Trust did not revoke, amend, change or reference the 1998 Trust.

---

[1] Exhibit O-3.
[2] Anthony Sorius died on July 2, 2002. Exhibit O-4.
[3] Exhibit O-2.
[4] Exhibit O-5.

2

2b

At all times relevant hereto, Mrs. Sorius resided at 6712-14 N. 7th Street in Philadelphia, Pennsylvania, (hereinafter referred to as the "real estate").[5] On October 2, 2003, title to the real estate was transferred from Mrs. Sorius, as surviving tenant by the entireties, and Alexander Pucunas, as surviving tenant by the entireties, to Alexander Pucunas and the 2002 Trust, as tenants in common.[6]

In June 2007, Mrs. Sorius contacted Stephen H. Green, Esquire (hereinafter referred to as "Mr. Green") to make changes to her estate documents.[7] She provided him with written instructions and copies of her Will and 1998 Trust.[8] He met with her, they exchanged correspondence, and he prepared a codicil to her Will, power of attorney, and amendments to her 1998 Trust.[9] The documents were reviewed and executed by her.[10] She did not provide a copy of the 2002 Trust.

The 2007 Amendments are titled "AMENDMENT TO THE FRANCES M. SORIUS LIVING TRUST DATED FEBRUARY 23, 1998," and the "SECOND AMENDMENT TO THE FRANCES M. SORIUS LIVING TRUST DATED FEBRUARY 23, 1998." Mrs. Sorius' amendments included naming Mr. Green as the successor trustee, providing additional gifts to family members and friends,

---

[5] Exhibit T-4 3. Title to the real estate was held, pursuant to Deed dated February 20, 1956, as tenants in common by Anthony Sorius and Francis M., his wife, and Alexander Pucunas and Jeanne, his wife.
[6] *Id.*
[7] N.T. (Green) p. 71.
[8] N.T. (Green) p. 75, 104.
[9] N.T. (Green) p. 97.
[10] N.T. (Green) p. 108; Exhibits O-8, O-7, O-9 and O-10.

3

making a conditional gift of the Vanguard 500 Index Fund Admiral account (hereinafter referred to as the "Vanguard shares") to Appellants, and changing the residuary beneficiaries of the 1998 Trust to include Appellants, Mr. Green and Helen Soris.[11] Mr. Green subsequently disclaimed his residuary share, resulting in Appellants' and Helen Soris' shares each increasing to one-third.

No allegations of undue influence, lack of capacity, testamentary or otherwise, confidential relationship or duress were made by any party with respect to Mrs. Sorius' actions. [12]

During her lifetime, Mrs. Sorius maintained both the 1998 Trust and the 2002 Trust as two separate trusts, obtaining and holding assets in both Trusts.

In June 2007, when Mrs. Sorius met with Mr. Green, her assets included: the Vanguard shares, a 50% interest in the real estate, and the Merrill Lynch account which were titled in the 2002 Trust; assets held in the 1998 Trust; assets held in the Anthony Sorius Trust;[13] and her personal property.

On June 26, 2007, Mrs. Sorius transferred funds from the Anthony Sorius Trust into the Merrill Lynch account held by the 2002 Trust.[14]

---

[11] Exhibit O-9.

[12] N.T. (Green) p. 71, 73-74, (Fay) p. 59.

[13] Reference to the Anthony Sorius Trust is made for purposes of tracing funds only. Mrs. Sorius was the trustee of the Anthony Sorius Trust created by her husband in 1998. The Trial Court did not rule on the propriety or validity of the transfers from the Anthony Sorius Trust, as they were not properly before the Court.

[14] N.T. (Hagerty) p. 173-178, Exhibit T-4 5.

4

In July 2007, she obtained 800 shares of Abington Bancorp Inc. common stock registered to the 2002 Trust by Certificate dated July 17, 2007.[15]

On August 23, 2007, Mrs. Sorius executed the Codicil to her Will, naming Mr. Green as executor, and the Power of Attorney, appointing him as her agent.

On September 5, 2007, she signed the Amendment to The Frances M. Sorius Living Trust dated February 23, 1998.

On October 18, 2007, Mrs. Sorius signed the Second Amendment to The Frances M. Sorius Living Trust dated February 23, 1998.

On October 26, 2007, eight days after executing the Second Amendment to the 1998 Trust, she transferred $122,872.62 to the DWS Investments Account, held by the 1998 Trust, from the Anthony Sorius Trust.[16]

On April 11, 2008, Mrs. Sorius, as trustee of the 2002 Trust, which owned a 50% interest in the real estate as tenants in common with Alexander Pucunas, purchased his 50% interest from the Estate of Alexander Pucunas, Deceased for $100,000.00.[17]

On September 9, 2010, the beneficiary designations of Mrs. Sorius' Vanguard IRA, held by the 1998 Trust, were changed to her estate as the primary beneficiary.[18]

---

[15] Exhibit T-4 2.
[16] N.T. (Hagerty) p. 170-171, Exhibit T-4 4.
[17] Exhibit T-1.
[18] Exhibit T-4 7.

5

Mrs. Sorius died testate on November 29, 2010. Her Will and Codicil were admitted to probate by the Register of Wills. Mr. Green was appointed executor of her Estate, and succeeded her as successor trustee of the 1998 Trust. At that time, the 1998 Trust and the 2002 Trust were in existence.

The 1998 Trust included the following:

| | |
|---|---|
| DWS Investments account | $82,455.00[19] |
| Vanguard IRA | $26,174.00.[20] |

The 2002 Trust included the following:

| | |
|---|---|
| Real estate, 6712-14 N. 7th St., Phila PA | $192,000.00[21] |
| Abington Bank account ending 3577 | 206.00[22] |
| Abington Bancorp, Inc. stock, 800 shares | 9,528.00[23] |
| Merrill Lynch CMA account ending 2157 | 511,013.00[24] |
| Vanguard 500 Index Fund Admiral shares | 107,365.00.[25] |

After Mrs. Sorius' death, Mr. Green, in his capacities as executor of her Estate, successor trustee of the 1998 Trust, and trustee *de son tort* of the 2002 Trust, transferred and retitled assets held by the 2002 Trust. Specifically, he transferred the Abington Bank checking account to an estate account, and he retitled the

---

[19] Exhibit T-4 4. DWS statement dated January 1, 2010 through December 31, 2010.

[20] Exhibit T-4 7. The primary beneficiary of the Vanguard IRA was Mrs. Sorius' Estate.

[21] Trustee's Account and Inheritance Tax Return, Schedule G.

[22] Exhibit T-4 1. Abington Bank Statement for period from 11/16/2010 to 12/15/2010.

[23] Exhibit T-4 2. Abington Bancorp Inc. certificate for 800 shares common stock.

[24] Exhibit T-4 5. Merrill Lynch Report for period from 10/30/2010 to 11/30/2010.

[25] Exhibit T-4 6. Vanguard value as of 11/29/2010.

6

Abington Bancorp stock,[26] Merrill Lynch account,[27] and Vanguard shares,[28] to the 1998 Trust.

## PROCEDURAL HISTORY

Pursuant to citations issued on petitions filed by Appellants, Mr. Green filed his First and Partial Account as Successor Trustee for the 1998 Trust and his First and Partial Account as Executor of the Decedent's Estate on December 24, 2012.[29] The accounts were called for audit on February 4, 2013. The Accountant raised questions but took no position on either the allocation of assets and expenses between the trusts or the effect of the 2007 Amendments.

Objections were filed by Appellants on January 29, 2013 asserting that it was Mrs. Sorius' intent that all her assets, however titled, should be included in the amended 1998 Trust and distributed according to its terms. Appellants also objected to unreasonable and excessive attorney fees, commissions, and funeral expenses, and requested reimbursement of their attorneys' fees.

---

[26] N.T. (Green) p. 144.
[27] N.T. (Green) p. 116 – 117.
[28] N.T. (Green) p. 118.
[29] This matter involved Petitions filed for the 1998 Trust, the 2002 Trust, the Decedent's Estate and the Power of Attorney. The four matters were consolidated for trial and discovery.

7

Objections were filed by Sandra Hagerty and Robert Soris[30] who asserted commingling of assets from the 1998 and 2002 Trusts with the Decedent's Estate and failure to property allocate assets among the 1998 Trust, the 2002 Trust, the Decedent's Estate, and the Anthony Sorius Trust.

Following conference, the cases were consolidated for trial and discovery. Scheduling orders were issued. Trial was held on November 5, 2014. Questions arose as to disputed terms in the notes of testimony, which were addressed by petition and resolved on April 30, 2015. The parties submitted their Proposed Findings of Fact and Conclusions of Law.

The Trial Court issued separate Adjudications for the Trustee's Account and the Executor's Account dated June 30, 2016. The Trial Court incorporates by reference its Adjudications, as though fully set forth herein, and attaches them to this Opinion as "Exhibit A," for a more extensive background and discussion.

Exceptions to the Court's Adjudication of the Trustee's Account were filed by Appellants on July 14, 2016 and by Mr. Green on July 27, 2016.[31] Appellants raised the Trial Court's failure to reform the 2007 Amendments based on mistake. Mr. Green raised the Court's denial of his fiduciary fees. Oral argument was heard

---

[30] Sandra Hagerty objected in her capacity as successor trustee and beneficiary of the 2002 Trust, devisee and beneficiary of the 1998 Trust, and successor trustee and beneficiary of the Anthony Sorius Trust. Robert Soris objected in his capacity as beneficiary under all three trusts. No appeal was taken by Sandra Hagerty or Robert Soris.

[31] Exceptions were filed pursuant to Pa. O.C. Rule 7.1 and Phila. O.C. Div. Rule 7.1.A. in effect at that time.

8

on both sets of Exceptions on October 20, 2016. Mr. Green's Exceptions were granted in part and denied in part on November 10, 2016.[32] Appellants' Exceptions were denied on November 10, 2016.

Appellants timely filed this appeal.[33] Appellants were ordered to file their Concise Statement of Errors Complained of on Appeal as required by Pa. R.A.P. 1925(b).

## STATEMENT OF ISSUES

Pursuant to the Trial Court's Order issued under Pa. R.A.P. 1925, Appellants timely filed their Concise Statement of Errors Complained of on Appeal which contained 25 separate allegations of error. Review of these alleged errors reveals that they are duplicative to a great degree and also segment the issues so as to render it difficult for the Court to cogently and concisely address the issues which Appellants have raised.

Therefore, the Trial Court consolidated and rearranged the issues to permit them to be addressed in the most comprehensible and exhaustive fashion. The issues

---

[32] By Decree dated November 10, 2016, the Trial Court granted Mr. Green's Exceptions in part and amended its Adjudication of the 1998 Trust to reflect a disbursement of principal in the amount of $5,992.60 to Mr. Green for fiduciary commissions and reimbursement of the account filing fee.
[33] No appeal was taken to the Trial Court's Adjudication of the Executor's Account.

9

to be addressed by the Trial Court herein, with the liberties as above noted, are as follows:

1. **Did the Trial Court err in failing to find that Mrs. Sorius' intent, as expressed in the 2007 Amendments, was affected by a mistake of fact or law, and therefore required reformation of the instruments?**

2. **Did the Trial Court err in finding that the 2007 Amendments were intended to amend only the 1998 Trust and not Mrs. Sorius' entire estate plan, where the Amendments referred to assets not owned by the 1998 Trust?**

## DISCUSSION

The essence of Appellants' appeal is that due to the "mistakes" of both Mrs. Sorius and Mr. Green, which included references in the 2007 Amendments to the Vanguard shares and real estate which were owned in whole or in part by the 2002 Trust, the 2007 Amendments should be reformed under 20 Pa. C.S. §7740.5 to apply to Mrs. Sorius' entire estate plan. This requires that the Trial Court find by clear and convincing evidence that it was Mrs. Sorius' intent, as expressed in the 2007 Amendments, to amend her entire estate plan. The Appellants failed to provide clear, direct, and substantial evidence sufficient to convince the Trial Court, without hesitation, that Mrs. Sorius intended to amend her entire estate plan, as shall be discussed in detail below.

10

1. **The Trial Court did not err in finding that Mrs. Sorius' intent, as expressed in the 2007 Amendments, was not affected by a mistake of fact or law, and therefore reformation of the instruments was not required.**

Reformation to correct mistakes is an equitable remedy permitted by the Uniform Trust Code and now codified in Section 7740.5 of Title 20 of the Probate Estates and Fiduciary Code as follows:

> The court may reform a trust instrument, even if unambiguous, to conform to the settlor's probable intention if it is proved by clear and convincing evidence that the settlor's intent as expressed in the trust instrument was affected by a mistake of fact or law, whether in expression or inducement. The court may provide that the modification have retroactive effect.

20 Pa. C.S. §7740.5. The Jt. St. Govt. Comm. Comment – 2005 to Section 7740.5 states that:

> Permission to reform an unambiguous trust instrument is a change in existing Pennsylvania law and follows the UTC. The requirement that "clear and convincing evidence of intent" be "expressed in the trust instrument" is a clarification of the UTC and consistent with refusal to recognize oral trusts in Pennsylvania.

20 Pa. C.S. §7740.5.

The higher evidentiary burden required of "clear and convincing" evidence is described in the Restatement (Third) of Property as: "… it is generally agreed that it requires an assertion to be established by a high degree of probability, though not to an absolute or moral certainty or beyond a reasonable doubt." Restatement (Third) of Property (Wills & Don. Trans.) §12.1, Comments. Juries are instructed

11

11b

that the evidence must be "so clear, direct, and substantial that you are convinced, without hesitation, that a fact is true." PA-JICIV 5.10, Pa. SSJI (Civ), § 5.10 (2013) Pennsylvania Suggested Standard Civil Jury Instructions, 4th Edition, 2016 Supplement. Our Supreme Court has stated that it is testimony that is "so clear, direct, weighty and convincing as to enable the [trier of fact] to come to a clear conviction without hesitancy, of the truth of the precise facts in issue." *In re LaRocca's Trust Estate*, 411 Pa. 633, 640, 192 A.2d 409, 413 (1963) (citations omitted).

The Restatement (Third) of Property (Wills & Don. Trans.) §10.2, Permissible Evidence for Determining Donor's Intention, Comment i, provides:

> A document that is unambiguous is entitled to a strong (but not irrebuttable) presumption of correctness, that is, to a strong presumption that it accurately expresses the donor's intention. An unambiguous document may be reformed, but to do so takes a showing *by clear and convincing evidence* that the donor's intention differed from the terms of the document.

The Restatement (Third) of Property (Wills & Don. Trans.) §10.2, Permissible Evidence for Determining Donor's Intention, Comment i, (emphasis in original) citing §12.1 Reforming Donative Documents to Correct Mistakes, Restatement (Third) of Property (Wills & Don. Trans.).

To reform an unambiguous trust instrument to conform to the settlor's probable intention under 20 Pa. C.S. §7740.5, the essential elements that must be

12

12b

proven by clear and convincing evidence are that the settlor's intent, as expressed in the trust instrument, was affected by a mistake of fact or law.

### A. The 2007 Amendments are unambiguous.

The 2007 Amendments are distinctly titled as amendments to the 1998 Trust in bold letters. They are in writing and signed by Frances M. Sorius as trustmaker and trustee, thus complying with the formal requirements for amending the trust as set forth in the Article Four Section 1(d) of the 1998 Trust instrument. On their face, the 2007 Amendments amend the 1998 Trust and the documents are unambiguous.

Given Mrs. Sorius' management of three different trusts, transfers between the trusts, and the purchase of the remaining 50% interest in her residence from the Estate of Alexander Pucunas for $100,000.00, all continuing and occurring after the execution of the 2007 Amendments, the Trial Court did not find that the reference to the Vanguard shares, the real estate, or the total amount of gifts to be made under the 2007 Amendments, was indicative of any ambiguity, mistake on the part of either Mrs. Sorius or Mr. Green, or an intent by Mrs. Sorius to alter her entire estate plan.

13

### B. Mrs. Sorius' intent as expressed in the 2007 Amendments.

The polestar of any trust interpretation is the settlor's intent, which unless unlawful, must prevail, and is determined by considering (a) all the language contained in the four corners of the document, (b) the scheme of distribution, and (c) the surrounding facts and circumstances. *Pew Trust*, 411 Pa. 96, 106, 191 A.2d 399, 405 (1963) (citations omitted), overruled in part by *Estate of Tyler*, 474 Pa. 148 (1977).

### 1. Four Corners of the 2007 Amendments.

On or about September 5, 2007, in accordance with Article Four Section 1 (d) of the 1998 Trust permitting amendment, Mr. Green prepared and Mrs. Sorius executed an Amendment titled "Amendment To The Frances M. Sorius Living Trust Dated February 23, 1998," making changes to Articles Twelve, Thirteen, Fifteen, Sixteen and Seventeen of the 1998 Trust.[34]

Article Twelve of the 1998 Trust was deleted in its entirety, substituting a new Article Twelve which provided for lump sum cash distributions, to ten (10) individuals, being family and friends, and bequests of specific items of tangible personal property to family members under Section 1 b.-e.

---

[34] Exhibit O-9.

14

New Article Twelve, Section 1 f. distributed: "all of my right, title and interests in and with respect to the premises 6712-14 (formerly 6708-12) N. 7th Street, Philadelphia, PA, and the furnishings therein, to Sandra Hagerty."

New Article Twelve, Section 1 g. distributed the Vanguard Admiral shares as follows:

> g. If I own Vanguard Admiral shares at my death, I give 50% of such shares to JOSEPH FAY, if he survives me, and 50% to MATTHEW SHAY, if he survives me. If such shares have been sold before my death, and if the proceeds of such sale are deposited to an earmarked account or reinvested in an earmarked reinvestment or investments, then the foregoing distribution shall apply to such proceeds or reinvestments or investments.[35]

The remainder of the trust property is distributed under New Article Twelve Section 1 h. in 25% shares each to Appellants Fay and Shay, Helen Soris and Mr. Green.

Amendment to Article Fifteen provided for the appointment of Mr. Green as successor trustee. Amendment of Article Seventeen provided for changes in administration powers.

The Trust was further amended on October 18, 2007 by "Second Amendment To The Frances M. Sorius Living Trust Dated February 23, 1998," which changed

---

[35] *Id.*

15

one of the specific cash bequests listed in the September 5, 2007 Amendment of Article Twelve.[36]

No mention is made in the 2007 Amendments of amending, revoking or changing the provisions of the 2002 Trust or that the proposed changes to the 1998 Trust were to affect Mrs. Sorius' entire estate plan.

### 2. The Scheme of Distribution.

At the time of her consultation with Mr. Green, the Settlor was widowed and never had any children. Her siblings had predeceased her. Her family consisted of: one niece Sandra Hagerty; Sandra's four children, Paul Hagerty, Diane Hronek, Susan Hagerty and Joseph Hagerty; one nephew Robert Soris; Robert's son, Robert William Soris; and Robert's mother, Helen Soris.

Prior to the 2007 Amendments, Mrs. Sorius' distributive scheme under both the 1998 Trust and the 2002 Trust provided for the residue of each trust to be divided equally between her niece Sandra Hagerty and her nephew Robert Soris.

In her 2007 Amendments, Mrs. Sorius expanded the specific gifts to include the children of both Sandra Hagerty and Robert Soris, the Appellants, and other friends. She changed the residuary beneficiaries under the 1998 Trust from Sandra and Robert to Appellants, Helen Soris, and Mr. Green. Mr. Green's subsequent Disclaimer, filed January 11, 2013, resulted in the residuary beneficiaries' shares

---

[36] Exhibit O-10.

16

being increased to one-third. The 2007 Amendments mention specific items of personalty, however, they were not listed in either the Trustee's Account or the Executor's Account.

The distributive scheme of both trusts, taken together, reflected Mrs. Sorius' desire to provide for her family and friends.

The Appellants did not prove and the Court did not find that it was Mrs. Sorius' intent in changing the residuary beneficiaries of the 1998 Trust to effectively remove Sandra Hagerty and Robert Soris as residuary beneficiaries under the 2002 Trust. The Trial Court found that the cash distributions to Sandra's children, Robert's son and Appellants under the 2002 Trust were not affected by the 2007 Amendments and the assets which were improperly transferred to the 1998 Trust should be returned to the 2002 Trust.

### 3. Circumstances and Facts Surrounding Execution of the 2007 Amendments.

Mrs. Sorius was an astute woman, who diversified her assets, held real estate, stock, various investment accounts, and managed her trust accounts. She conducted financial transactions involving both the 1998 Trust and the 2002 Trust, and retained the absolute right under the terms of the 1998 Trust to add to the trust property at any time.[37] No allegations were made that she was unable to manage her affairs.

---

[37] Exhibit O-3, 1998 Trust, Article Four, Section 1 d.

17

In 2007, Mrs. Sorius met with Mr. Green and provided him with written instructions and copies of her Will and the 1998 Trust. She reviewed drafts of the proposed 2007 Amendments, requested changes, and signed the documents. The 2007 Amendments were clearly identified as Amendment and Second Amendment to The Frances M. Sorius Living Trust dated February 23, 1998.

At the time Mrs. Sorius contacted Mr. Green, she had already provided for Appellants by gifts of $10,000.00 to each of them under her 2002 Trust. Appellants were not and did not become beneficiaries under the 1998 Trust until after it was amended. Between the time of her meeting with Mr. Green in June 2007 and execution of the 2007 Amendments, Mrs. Sorius purchased Abington Bancorp, Inc. stock for the 2002 Trust and transferred funds into the Merrill Lynch account of the 2002 Trust. Eight days after executing the 2007 Amendments, she transferred funds in the DWS Investments account of the 1998 Trust.

Her failure to give Mr. Green a copy of the 2002 Trust in 2007, either during preparation or execution of the 2007 Amendments, combined with her purchasing assets in the 2002 Trust's name during that same period of time is evidence that it was her intent to only amend the 1998 Trust, and not her entire estate plan.

The Appellants failed to prove by clear and convincing evidence that it was Mrs. Sorius' intent, as expressed in the 2007 Amendments, that all her assets should

18

be governed by the 1998 Trust. The Trial Court was not convinced, without hesitation, that it was Mrs. Sorius' intent to completely change the distributive scheme of her entire estate plan which would result in the removal of Sandra Hagerty and Robert Soris as the residuary beneficiaries of the 2002 Trust.

### C. Appellants failed to prove mistake of fact or law.

Appellants assert the following as clear and convincing proof of mistake by both Mrs. Sorius and Mr. Green:

1. Reference in the 2007 trust amendments to assets owned by the 2002 Trust or the Decedent personally;
2. Mistaken inclusion of assets not owned by the 1998 Trust in the 2007 trust amendments, specifically the Vanguard Admiral shares, the decedent's residence and funds sufficient to pay $300,000.00 in gifts;
3. The decedent's written instructions;
4. The post-death actions of Mr. Green "to correct his mistakes;" and
5. The testimony, correspondence and admissions of Mr. Green.


### 1. Execution and Post-Execution Transactions.

The applicable time period for a determination of mistake is the date of execution by Mrs. Sorius and her post-execution transactions. As the Trial Court already discussed Mrs. Sorius' actions surrounding execution of the documents, *supra,* they will not be restated here.

### 2. Reference to assets held by the 2002 Trust.

The fact that the 2007 Amendments reference the Vanguard shares which were held in the 2002 Trust, the real estate which was owned 50% by the 2002 Trust

19

and 50% by Alexander Pucunas, and contemplate specific monetary gifts totaling $300,000.00 is not indicative of any mistake or desire that Mrs. Sorius' entire estate should be distributed under the terms of the 1998 Trust.

As a general matter, it is not unusual for trusts to be created and funded at a later date and for assets to be transferred into or out of trusts during the life of the trust.

The language of new Article Twelve, Section 1 g. distributing the Vanguard shares does not indicate an absolute gift of those shares to Appellants. To the contrary, Mrs. Sorius' distribution of the Vanguard shares to Appellants Fay and Shay is subject to several conditions: (1) that the Vanguard shares are owned by her at her death, (2) that the Appellants survive her, and (3) if the shares have been sold prior to her death, then only "if the proceeds are deposited into an earmarked account or reinvested in an earmarked reinvestment or investments," will be proceeds be distributed as set forth. At Mrs. Sorius' death, the Vanguard shares were owned by the 2002 Trust, not by her, therefore, the first condition for distribution of those shares was not met.

No testimony or evidence was presented as to why the Vanguard shares were mentioned in the 2007 Amendments or why the gift to Appellants was conditional. The Trial Court is not willing to conclude, without any clear and convincing evidence, that their inclusion was a signal that Mrs. Sorius intended to amend her

20

entire estate plan given the various transactions made by her with respect to both trusts following her execution of the 2007 Amendments.

The failure of the 1998 Trust to have sufficient funds on the date of the 2007 Amendments to pay all the specific gifts is also not an indication that all of Mrs. Sorius' assets should be administered under the terms of the 1998 Trust. Gifts lapse for numerous reasons, including insufficient funds.

Appellants failed to provide any clear, convincing and credible testimony or evidence to prove that the inclusion of items owned by the 2002 Trust was due to Mrs. Sorius' intention to alter her entire estate plan.

### 3. Mr. Green's actions post-death.

Mr. Green's actions post-death are not determinative of mistake at the time of execution of the documents. As more fully set forth in the Court's Adjudication of the Trustee's Account, Mr. Green's post-death actions were improper. He breached his fiduciary duty as trustee of the 1998 Trust, and his actions as a trustee *de son tort* in transferring assets from the 2002 Trust into the 1998 Trust were irresponsible. His testimony that he had no knowledge of the existence of the 2002 Trust until after Mrs. Sorius' death was not credible based on his involvement with transfer of title to the real estate in 2008 and his actions as agent under power of attorney. His failure to ascertain and verify title to Mrs. Sorius' assets at the time the documents were prepared and his testimony that he would have done differently are not evidence of

21

a mistake requiring reformation of Mrs. Sorius' 2007 Amendments. Mrs. Sorius provided him with written instructions which he followed in preparing the documents. She made changes, reviewed drafts and executed the 2007 Amendments.

Appellants' failed to prove the existence of any mistake, let alone that Mrs. Sorius' intent, as expressed in the 2007 Amendments, was affected by such a mistake. The Trial Court properly determined that Appellants failed to prove, by clear and convincing evidence, that Mrs. Sorius' intent, as expressed in the trust instrument, was affected by a mistake of fact or law, thus requiring reformation.

 

 

2. **The Trial Court did not err in finding that the 2007 Amendments were intended to amend only the 1998 Trust and not Mrs. Sorius' entire estate plan, where the Amendments referred to assets not owned by the 1998 Trust.**

Appellants failed to prove that Mrs. Sorius' intent, as expressed in the 2007 Amendments, was to amend her entire estate plan. When she consulted with Mr. Green, she provided him with written instructions for changes to her Will, the 1998 Trust and for the creation of a power of attorney. Mr. Green prepared the documents in accordance with her written instructions. She reviewed the drafts, made changes and executed the 2007 Amendments. She maintained and managed both the 1998 Trust and the 2002 Trust after the execution of the 2007 Amendments, and never provided Mr. Green with a copy of the 2002 Trust instrument. Since both Trusts

22

continued to be in existence and based on Mrs. Sorius' desire to provide for her family and friends, the Trial Court was not willing to conclude that she intentionally changed her entire estate to benefit the Appellants at the expense of her niece and nephew.

Absent clear and convincing testimony and evidence that it was Mrs. Sorius' intent to amend her entire estate plan, the Trial Court had no alternative but to find that the amendments were to the 1998 Trust only.

## CONCLUSION

While reformation of an unambiguous trust instrument is permitted under certain circumstances, it should not be used to obtain a better financial outcome for some, at the expense of the Settlor's intention.

Without any clear and convincing evidence from Appellants that Mrs. Sorius' intent, as instructed and stated in the 2007 Amendments, was affected by mistake and/or intended to apply to her entire estate, thus removing her niece and nephew as beneficiaries of the 2002 Trust, the Trial Court properly determined that the 2007 Amendments amended only the 1998 Trust and ordered the return of assets improperly transferred from the 2002 Trust.

Date: 3/28/17

CARRAFIELLO, A.J.

Marc L. Davidson, Esq.
Brian McDevitt, Esq.
Stephen H. Green, Esq.

23