J-A27024-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| TRUST OF SOL E. HARRISON AND SYDRIA HARRISON, SETTLORS, UNDER DEED OF TRUST DATED APRIL 29, 1995 | : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: THEODORE HARRISON | : | No. 635 EDA 2021 |

Appeal from the Order Entered March 4, 2021
In the Court of Common Pleas of Bucks County Orphans' Court
at No(s):  No. 2019-0285

BEFORE:    PANELLA, P.J., DUBOW, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:                **FILED JANUARY 4, 2022**

Theodore Harrison (Father) appeals from the order entered in the Bucks County Court of Common Pleas, Orphans' Court, granting in part and denying in part the petition of his son, Michael E. Harrison (Son), to compel accounting of the Irrevocable Trust for Michael E. Harrison, dated April 29, 1995 (the Trust).  Pertinently, the trial court directed Father, as trustee of the Trust, to distribute one-third of the Trust's principal to Son, the sole beneficiary, as permitted under the terms of the Trust.  On appeal, Father avers the trial court erred in: (1) not permitting discovery to be completed prior to holding a hearing and ruling on the ultimate issues; (2) misapplying Florida law in finding he acted outside his discretion as trustee; and (3) sustaining objections Son's counsel made during Father's cross-examination of Son.  We affirm.

## I. Facts & Procedural History

On April 29, 1995, Son's paternal grandparents, Sol E. and Sydria Harrison (Grandparents) created the Trust, naming Son the sole beneficiary and Father the sole trustee.[1] Grandparents funded the Trust with $20,000 and Father has contributed $50,000. The Trust principal is now approximately $540,000. Pursuant to the terms of the Trust, the instrument is governed by Florida law. Father is an otolaryngologist, or head and neck surgeon. N.T., 1/26/21, at 89. He has used Trust funds to pay toward Son's college tuition and travel expenses, as permitted under the Trust terms. Trial Ct. Op., 5/11/21, at 2.[2]

The Trust provides that upon reaching age 30, Son "shall have the right to withdraw up to one-third of the principal . . . at any time or from time to time." Irrevocable Trust for Michael E. Harrison, 4/29/95 (Trust), at 3. The Trust further provides that Son may withdraw "the entire balance . . . at any time after attaining the age of 35." *Id.* In 2017, when Son was 30 years old, he requested a distribution of one third of the Trust principal.

However, Father refused, citing the following clause in the Trust:

> Any property distributable to a beneficiary **who is under a disability** may be retained by our Trustee and may be invested

---

[1] Son was 33 years old at the time of the January 26, 2021, evidentiary hearing.

[2] The trial court filed two largely overlapping opinions, on March 4 and 11, 2021. This memorandum refers to both.

and applied (together with any income earned by it) from time to time for the beneficiary's benefit in any way which our Trustee may deem appropriate.

* * *

For the purposes of this Section **a beneficiary shall be considered to be under a disability** while under the age of twenty-one (21) years or **at any time when such beneficiary shall in the opinion of our Trustee be unable by reason of illness or other condition to properly manage his or her affairs**.

Trust at 4 (emphases added). Father believed Son suffered from attention deficit hyperactivity disorder (ADHD) and marijuana use, which affected his ability to manage his affairs. Father also averred Son was in the business of dealing marijuana.

On June 17, 2019, Son, then aged 31, filed the underlying "Petition to Compel Accounting of Trust, Compel Removal of Trustee, and Authorize Petitioner to Withdraw Pursuant to the Trust."[3] Son averred, generally: (1) he did not know of the existence of the Trust until a representative at "Janney

---

[3] In July of 2019, Son also filed suit against Father in federal court in the Eastern District of Pennsylvania, likewise seeking the distribution of one third of the Trust principal. Son's federal suit included claims of breach of fiduciary duty, fraud, conspiracy, gross negligence, intentional infliction of emotional distress, and violations of the Racketeer Influenced and Corrupt Organizations Act (RICO).

Father has included in his brief a copy of the district court's July 15, 2021, opinion, which indicates that court granted Father's motion for summary judgment. **See Harrison v. Harrison**, 2021 WL 3022416 (E.D. Pa. July 15, 2021), at *23 (Father's Brief, unnumbered attachment).

Montgomery Scott" informed him, in April of 2017, when Son contacted them with tax questions; and (2) Father has fraudulently attempted to transfer or embezzle Trust funds. Son requested: (1) an accounting of the Trust; (2) distribution of one third of the Trust's principal; and (3) removal of Father as Trustee.

In September of 2020, Father filed a motion to compel discovery. On October 6th, the date for a scheduled hearing, the trial court instead conducted an off-the-record conference. Trial Ct. Op., 5/11/21, at 1. At the court's suggestion, and "in an attempt to move the case forward, the parties agreed to [first focus on Son's] request for an accounting of the trust and a one-third distribution[,] with the issue of removal [of Father as trustee] to be addressed at a later time." *Id.* at 1-2. The court directed the parties to submit briefs and appointed a Master to oversee discovery. After additional off-the-record conferences, Father served interrogatories on Son on December 28, 2020, but did not receive a response prior to a January 26, 2021 evidentiary hearing. *See* Father's Brief at 20,

At the evidentiary hearing, Father testified to the following: Son had known about the Trust for years. As a surgeon, Father purported to have particularized knowledge and explained that Son was diagnosed with ADHD as a child and has struggled with that condition for years. Son was a frequent user of marijuana, and he had grown the drug in the family's backyard. Son had admitted to an incident, in college, where he was held at gunpoint while

buying drugs. Father accused Son of dealing drugs and stealing Father's prescription pad to obtain prescription drugs to sell. Father believed these conditions were ongoing and prevented Son from properly managing his affairs. Furthermore, Father contended Son is perpetually unemployed.

Son, in turn, testified to the following. He lives independently in Long Island, New York, with his girlfriend, is employed as a dog walker, and also helps his girlfriend with her interior design business. Son insisted that he has never sold drugs, and further stated that Father cannot evaluate whether he can handle his own affairs because he and Father have been estranged since 2017.

On March 4, 2021, the trial court entered the underlying order, denying in part and granting in part Son's petition. The court found Son knew of the Trust as early as 2006, and thus could have filed an action against Father sooner. Trial Ct. Op., 3/4/11, at 6. Nevertheless, Father agreed to provide an accounting of the Trust dating back to 2013. *Id.* Next, the court found that Father, under Florida law, did not exercise his discretion in good faith in withholding the one-third distribution.[4] The court thus directed Father to distribute a one-third share of the Trust principal to Son. Father filed a timely

---

[4] The issue of Father's removal as trustee remains outstanding. Trial Ct. Op., 5/11/21, at 8 n.3.

notice of appeal and subsequently filed a court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

At this juncture, we note that within a week of oral argument in this appeal, Son filed a motion for leave to file a sur reply to Father's reply brief. Son wished to address a recently-executed affidavit from his brother (Father's other child).[5]  Father then filed a motion for continuance of oral argument, requesting additional time to respond to Son's motion, which Father further averred should be denied.  On December 7th, this panel denied both Son's motion for leave to file a sur reply and Father's motion for a continuance.

## II.  Questions Presented & Standard of Review

Father raises the following issues for our review:

1.  Did the trial court err in failing to permit the parties to complete discovery prior to hearing the matter on merits?

2.  Did the trial court err in substituting its own judgment for [Father's] discretion, when the plain and unambiguous language of the Trust instrument states, "[a] beneficiary shall be considered under a disability . . . at any time when such beneficiary shall in the opinion of [Trustee] be unable by reason of illness or other condition to properly manage his or her affairs"?

3.  Did the trial court err in overriding the discretion of [Father] when Florida law provides that there is a presumption that the trustee will exercise power in good faith, and where the trial court did not find that [Father] was acting in bad faith, and where [Son] failed to present any evidence to the trial court to disturb the presumption that [Father] acted in good faith?

---

[5] The brother executed the affidavit on November 17, 2021 — eight months after the trial court issued the underlying order.

4. Did the trial court err in failing to permit questioning of [Son] as to issues of prescription drug medication and his ability to understand questions?

Father's Brief at 3-4.

We note the relevant standard of review:

When reviewing a decree entered by the Orphans' Court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion.

However, we are not constrained to give the same deference to any resulting legal conclusions.

*In re Fiedler*, 132 A.3d 1010, 1018 (Pa. Super. 2016) (*en banc*) (citation omitted).

### III. Discovery

In his first issue, Father asserts the trial court erred in precluding him from completing discovery before deciding the issues. In support, he emphasizes the discovery master gave the parties until December 28, 2020, to propound interrogatories and requests for documents, and Father did serve Son with requests on that date. Father asserts that Son thus had until January 28, 2021, to respond, but the court conducted the sole evidentiary hearing in this matter on January 26th. Father contends he was forced to proceed without the benefit of critical discovery, which could have led to evidence that Son was unable to manage his affairs. He points out the district court in Son's

federal case found Son's discovery responses to be tellingly lackluster. Whereas the trial court found this issue was waived, Father responds he did raise, at the evidentiary hearing, the issue of the absence of discovery. We conclude this issue is waived.

Here, the trial court found:

On December 23, 2020, we issued an Order scheduling an evidentiary hearing to address [whether Father had grounds to withhold distribution. The hearing] was held on January 26, 2021. Although we were aware that discovery was ongoing in this case and a related case in federal court, and we appointed a Master in discovery, a review of the record demonstrates that Appellant's counsel failed to request a continuance of the January 26, 2021 hearing on the basis that discovery was not complete.[ ] As Appellant failed to request a continuance of the hearing on the record, we perceive that Appellant has waived this issue on appeal. *See* Pa.R.A.P. 302(a) (stating that "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal").

Trial Ct. Op., 5/11/21, at 8.

Although Father did refer to the outstanding discovery during the January 26, 2021, evidentiary hearing, he did not, as the trial court pointed out, request the hearing to be continued, and thus provide the court with the opportunity to address or rectify any discovery issue. Pertinently, Father did not explain to the court why any outstanding discovery would alter the outcome of the case. Hence, we agree that Father's discovery claim is waived due to a failure to raise it before the trial court. *See* Pa.R.A.P. 302(a).

## IV. Father's Discretion to Withhold Distribution

In his second and third issues, Father contends the trial court erred, pursuant to Florida law, in concluding he improperly applied his discretion under the Trust. Father cites Florida statute, F.S.A. § 736.0814(1), which states in part: "A court shall not determine that a trustee abused its discretion merely because the court would have exercised discretion in a different manner or would not have exercised the discretion." Father's Brief at 29. Father insists the trial court violated Florida law by supplanting his discretion, as trustee, with the court's own discretion. He maintains that ample evidence supported his conclusion that Son's ADHD, together with continuous marijuana use, rendered Son "disabled" and unable to manage his own affairs as set forth in the Trust's disability clause. After careful review, we conclude no relief is due.

We note Florida decisional authority: "while the grant of absolute discretion to a fiduciary is very broad, 'a trustee is always subject to accountability to remaindermen where discretion is improperly, arbitrarily or capriciously exercised.'" **Rachins v. Minassian**, 251 So.3d 919, 924 (Fla. Dist. Ct. App. 2018) (citation omitted); **see also** F.S.A. § 736.0814(1). "[E]ven though a grant of 'absolute discretion' to a fiduciary is very broad, it does not relieve a trustee from the exercise of good faith or from being judicious in his administration of the trust, which administration is always

subject to review by the court in appropriate instances." ***Mesler v. Holly***, 318 So.2d 530, 533 (Fla. Dist. Ct. App. 1975).

Here, the trial court determined that Father acted "outside" his discretion under the terms of the Trust because the evidence was insufficient to establish that Son suffered from a disability rendering him incapable of managing his own affairs. The trial court extensively considered the evidence presented by the parties, summarizing:

> [Father] testified that [Son] was formally diagnosed with ADHD at age eleven. [Father] explained that school was difficult for [Son] and he needed special accommodations as a result. [Father] described his son as a risk-taker and often impulsive.
>
> At or around 2006, [Son] earned a Presidential scholarship and began college at the University of Maryland. [Father] authorized the use of trust funds to pay for [Son's] college and various other expenses, such as travel. [Son] also financially contributed to his own education by paying for tuition with other monies received from family. During college, [Son's] grades fell below a specified threshold and he lost his scholarship. [Son] explained that at the time he prioritized his success at poker above his schooling. In June of 2012, [Son] graduated from college with a degree in finance.
>
> After graduation, [Son] returned from college to live with his parents in New Hope, Pennsylvania. [Father described Son's] marijuana use during that time . . . as pervasive. [Father] related that he not only observed his son using marijuana, but also discovered marijuana plants that [Son] grew behind his residence. [Father] testified that while [Son] was in college an individual pointed a gun at him. [Father] believed that this incident was related to [Son's] involvement with marijuana. [Father] also believes that [Son] deals drugs, including marijuana and Adderall, as he has seen [Son] with large amounts of cash at times when [Son] had minimal employment. [Father], who is a surgeon, testified that his son stole his prescription pad to write himself prescriptions that he later sold. [Son], however, testified that

although he has engaged in marijuana use in the past, he does not nor ever has dealt drugs.

In 2015, [Son lived in his parents'] apartment in New York for one year. [Father] testified that while [Son] lived at the New York apartment, [Son] did not pay rent or apartment expenses. In 2016, [Son] moved out of his parents' apartment and began living with his girlfriend in New York.

At [the] hearing, the Court was presented with extensive testimony regarding [Son's] prior employment status, including short stints waiting tables, bartending and providing catering services. Despite [Son's] several representations in prior depositions that he was a co-owner of his girlfriend's interior design business, [Son] admitted at [the] hearing that he is not a co-owner. [Son] stated that he previously had a health and wellness consulting business but could not provide any receipts or proof of such employment. [Son] currently walks dogs for which he is paid in cash approximately $15,000 per year.

[Father] has always prepared and handled his son's tax returns. At [the] hearing, [Son] expressed a desire to prepare and submit his own taxes. He stated, however, that he has been unable to do so because [Father] has not sent him requested information. . . .

The last encounter [Father] had with his son was in June of 2017. [Son] visited [Father] and requested . . . an accounting of the trust and authorize distribution of one-third of the trust principal to him. Since the incident, the relationship between [Son] and [Father] has been strained. [Father] testified that shortly after the June incident, [Son] sent him an email threatening to have [Father's] medical license revoked. Since 2017, [Son] and his father have not spoken directly, nor has [Father] provided any financial assistance to [Son] with respect to the trust funds. Son is currently [33] years old and lives in Long Island, New York, with his girlfriend.

Trial Ct. Op., 5/11/21, at 3-5.

The trial court made the following findings:

The evidence presented at hearing establishes that [Son] clearly does not suffer from a disability or disabling condition.[ ]

We found that [Father] failed to demonstrate how [Son's] childhood ADHD and later marijuana use presently renders [Son] unable to manage his affairs. At [the] hearing, the Court was not presented with an expert report or testimony regarding [Son's] current medical status, or a recent diagnosis of ADHD, nor was any testimony presented concerning the [e]ffect of marijuana use on [Son's] cognition. [Father] merely offered anecdotal testimony regarding [Son]'s lifestyle and impulsivity.

We determined that these observations failed to reasonably establish a disability or disabling condition under the trust. To the contrary, [Son] has been able to function as a young adult to the extent that he attended college, graduated with a degree in finance, and is apparently living with his girlfriend in New York at the present time. Moreover, we were unable to conclude that [Son] is currently disabled in any way through [Father's] testimony in that he and [Son] have been estranged since June of 2017.

Trial Ct. Op., 5/11/21, at 10 (paragraph break added).

The trial court acknowledged that Father "would not want to give a large sum of money to his son, whom he considers underemployed and not on a productive life path at the present time." Trial Ct. Op., 5/11/21, at 10. However, the court found it was "constrained to enforce the terms of the trust as written." *Id.* It considered that **if** Grandparents "wished the trustee to have unbridled discretion with respect to the one-third distribution provision, the disability clause would not have been placed in the trust agreement as there would have been no need for it." *Id.* at 9.

On appeal, Father largely presents the same arguments that were aptly and thoroughly addressed by the trial court, who sat as the finder of fact. The court was well within its purview when making credibility determinations regarding the testimony. To the extent Father's claims would require this

Court to supplant the court's credibility determinations with our own, no relief is due. The court did not err in its application of Florida law when determining that Father acted outside the bounds of his discretion under the Trust terms. We conclude the court's findings are supported by the record, and thus Father's second and third issues do not merit relief. ***See In re Fiedler***, 132 A.3d at 1018.

### V. Evidentiary Rulings – Cross Examination of Son

In his fourth issue, Father challenges the trial court's decisions to sustain objections to two questions posed by Father's counsel to Son on cross-examination. For ease of review, we summarize the objections and the context in which they were made. First, Father's counsel engaged in an extended exchange with Son about: whether there was written documentation to support Son's claim that he was a co-owner of his girlfriend's business; Son's prior deposition statement that there was such a written contract; and Son's testimony that there was a "misunderstanding." N.T., 1/26/21, at 128-31. Father's counsel then asked Son, "Do you have problems, due to your ADHD, in understanding questions that I pose to you?" ***Id.*** at 131. Son objected, and the trial court sustained the objection.

Subsequently, Father's counsel cross-examined Son about whether Father provided him a credit card and paid post-college expenses for Son. N.T., 1/26/21, at 161. The following exchange occurred:

> [Son:] You mean expenses where he didn't expect to ever be reimbursed, and he actually testified to that under oath?

- 13 -

[Father's counsel:] Sir, that question — we know you want to tell us your trial theory.

[A:] No. I have his testimony from the Florida probate matter in probate court.

**Q: Did you take Adderall today?**

*Id.* (emphasis added). Son objected to his last question, and the trial court sustained the objection. *Id.*

On appeal, Father contends the trial court erred by precluding responses to the posed questions, because the questions were probative as to whether Son had a "disability" under the terms of the Trust. No relief is due.

We consider the standard of review:

> "[I]t is well settled that the admissibility of evidence is a determination left to the sound discretion of the trial court, and it will not be overturned absent an abuse of discretion or misapplication of law." For a ruling on the admissibility of evidence to constitute reversible error, it must have been harmful or prejudicial to the complaining party.

*In re Fiedler*, 132 A.3d at 1025 (citation omitted).

In the case *sub judice*, the trial court concluded that it admitted ample evidence, including Father's testimony, of Son's Adderall use in connection with his ADHD diagnosis. Nevertheless, the court did not find this information relevant, nor dispositive as to the issue of whether Son had a "disability." We concur and thus do not find the trial court abused its discretion by limiting Son's cross-examination regarding the same. *See In re Fiedler*, 132 A.3d at 1025. Hence, Father's final issue also warrants no relief.

Nothing in this memorandum shall preclude the parties from seeking judicial review of future Trust distributions or other new issues arising.

## VI. Conclusion

We affirm the trial court's order granting in part and denying in part Son's petition to compel an accounting and to direct distribution of one-third of the Trust principal to him.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/4/2022