J-S37002-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: J.V.D., AN ALLEGED INCAPACITATED PERSON | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.V.D. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1402 EDA 2023 |

Appeal from the Decree Entered May 15, 2023
In the Court of Common Pleas of Montgomery County Orphans' Court at
No(s):  2023-X0288

BEFORE:  BENDER, P.J.E., MURRAY, J., and SULLIVAN, J.

MEMORANDUM BY BENDER, P.J.E.:          **FILED FEBRUARY 08, 2024**

J.V.D. (Appellant) appeals from the May 15, 2023 decree adjudicating her an incapacitated person and appointing a permanent plenary guardian of her person and estate.  Following review, we affirm.

While Appellant resided at The Brookside Healthcare & Rehabilitation Center (Brookside), Brookside initiated this proceeding below with the filing of a petition, pursuant to Section 5511 of the Probate, Estates and Fiduciaries (PEF) Code (20 Pa.C.S. §§ 101-8815), requesting that the orphans' court declare Appellant incapacitated and appoint Tracey Miles of Just Too Much 2 Do, LLC, as guardian of her person and estate.  Two hearings were held, one on March 20, 2023, and the other on May 15, 2023.  At the March 20th hearing, Brookside presented the direct testimony of Dr. I. Barry Bell.  At the May 15th hearing, Dr. Bell was cross-examined.  Additionally, the court heard testimony from Charli Daniel, of Montgomery County Senior Services, Sylvia O'Connell,

Brookside's representative, and Ms. Miles, the proposed guardian. The court also heard testimony from Maleek M., one of Appellant's two grandsons. Her other grandson, Malcolm M., did not appear at the hearing.[1] Thereafter, the court entered the decree now on appeal, finding Appellant incapacitated and appointing Ms. Miles as the permanent plenary guardian of Appellant's person and estate.[2]

Appellant raises the following issue for our review:

Whether the [o]rphans' [c]ourt erred in finding Appellant to be incapacitated and appointing a plenary guardian of the person and estate?

Appellant's brief at 11.

We begin by setting forth our standard of review.

Our standard of review of the findings of an orphans' court is deferential.

When reviewing a decree entered by the orphans' court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the orphans' court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion.

However, we are not constrained to give the same deference to any resulting legal conclusions.

*In re Estate of Harrison*, 745 A.2d 676, 678-79 (Pa. Super. 2000), *appeal denied*, … 758 A.2d 1200 ([Pa.] 2000) (internal citations and quotation marks omitted). "The orphans' court

---

[1] Prior to the time Appellant moved into Brookside, she had executed a healthcare power of attorney naming her two grandsons as agents.

[2] The docket indicates that Appellant timely filed her notice of appeal.

decision will not be reversed unless there has been an abuse of discretion or a fundamental error in applying the correct principles of law." ***In re Estate of Luongo***, 823 A.2d 942, 951 (Pa. Super. 2003), *appeal denied*, … 847 A.2d 1287 ([Pa.] 2003).

***In re Fiedler***, 132 A.3d 1010, 1018 (Pa. Super. 2016) (quoting ***In re Estate***

***of Whitley***, 50 A.3d 203, 206-07 (Pa. Super. 2012) (cleaned up)).

We further observe that:

The appointment of a guardian lies within the discretion of the trial court and will be overturned only upon an abuse of discretion. Discretion must be exercised on the foundation of reason. An abuse of discretion exists when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will.

***In re Duran***, 769 A.2d 497, 506 (Pa. Super. 2001) (internal citations and

quotation marks omitted).

Chapter 55 of the PEF Code governs incapacitated persons. An "incapacitated person" is defined as "an adult whose ability to receive and evaluate information effectively and communicate decisions in any way is impaired to such a significant extent that he is partially or totally unable to manage his financial resources or to meet essential requirements for his physical health and safety." 20 Pa.C.S. § 5501. "[U]pon petition and hearing and upon the presentation of clear and convincing evidence, [the court] may find a person domiciled in the Commonwealth to be incapacitated and appoint a guardian or guardians of his person or estate." 20 Pa.C.S. § 5511(a).

The legislature has enumerated the following specific considerations and findings necessary for the resolution of a guardianship petition by an orphans' court:

**(a) Determination of incapacity.**—In all cases, the court shall consider and make specific findings of fact concerning:

(1) The nature of any condition or disability which impairs the individual's capacity to make and communicate decisions.

(2) The extent of the individual's capacity to make and communicate decisions.

(3) The need for guardianship services, if any, in light of such factors as the availability of family, friends and other supports to assist the individual in making decisions and in light of the existence, if any, of advance directives such as durable powers of attorney or trusts.

(4) The type of guardian, limited or plenary, of the person or estate needed based on the nature of any condition or disability and the capacity to make and communicate decisions.

(5) The duration of the guardianship.

(6) The court shall prefer limited guardianship.

…

**(c) Plenary guardian of the person.**—The court may appoint a plenary guardian of the person only upon a finding that the person is totally incapacitated and in need of plenary guardianship services.

…

**(e) Plenary guardian of the estate.**—A court may appoint a plenary guardian of the estate only upon a finding that the person is totally incapacitated and in need of plenary guardianship services.

20 Pa.C.S. § 5512.1.

Instantly, the thrust of Appellant's arguments center on allegations that the testimony provided by Dr. Bell, Ms. Daniel, and Maleek M. was not clear and convincing and did not support a finding of incapacity and the need for the appointment of a guardian of the person and the estate. *See* Appellant's brief at 18-20. Appellant has failed to convince us that any relief is due.

Brookside aptly summarized the evidence produced below, as follows:

Dr. Bell stated that he first saw [Appellant] on October 28, 2022[,] shortly after her admission to Brookside…. Dr. Bell then saw and evaluated [Appellant] three more times: November 1st, November 16th, and December 20th. Dr. Bell reviewed medical records from Abington Memorial Hospital and from Brookside and spoke to the Brookside staff. He also stated that he typically relies upon such information, in part, in forming his opinions and reaching his conclusions. He indicated that the hospital records noted diagnoses of depression and dementia. Dr. Bell also conducted a clinical interview and administered a "mini-mental" status examination. He acknowledged that [Appellant] scored a 30 out of 30 on the mini-mental examination, but stated that his overall findings regarding capacity also took into account how [Appellant] was functioning, whether she was able to take reasonable steps to ensure her safety, and whether her thought processes were rational. Dr. Bell concluded that [Appellant] was illogical, that her home and person were both disheveled, and that the home was dirty, unlivable and in a poor state of disrepair. He determined that [Appellant] did not recognize the reality of her situation and when questioned further became defensive, hostile, and irritable. Dr. Bell also indicated that [Appellant] had been prescribed Aricept, a medication taken to slow the process of dementia, before she had come to live at Brookside. He further recounted [Appellant's] prior medical history during her previous admission at Abington Hospital which indicated that she had refused care, including at one point the changing of her soiled [underwear]. He concluded that [Appellant] was incapable of making her own decisions and that it was in her best interests to have a guardian appointed to meet her needs. Dr. Bell's expert report was then admitted into evidence without any objection from [Appellant's] counsel.

Upon cross-examination at the second hearing, Dr. Bell again recounted the deplorable condition of [Appellant's] person and her home and added that a concern for the handling of her finances had been raised by social services at Brookside. Dr. Bell also noted additional concerns reflected in the record by a family member identified as [Appellant's] daughter that [Appellant] had not been eating or drinking properly. Dr. Bell differentiated [Appellant's] reaction from one of simply defending her life[style] to one where "it's clearly paranoid and it is a distortion of reality. It is a lack of comprehending of how things are occurring. It's clearly delusional." He summed up the situation by stating: "She wasn't letting the staff care for her. She wasn't taking care of herself properly."

Other witnesses unequivocally and clearly supported and affirmed Dr. Bell's findings. [Ms.] Daniel, a caseworker at Montgomery County Senior Services, stated that she had conducted a home visit with [Appellant] on May 18, 2022[,] and noted that the outside of the home was "dilapidated." "The stairs going to the front door, I didn't know how I was going to navigate because they were crumbling, and the railing was not attached." Inside the house, she discovered tables and chairs had been overturned. There was a recliner in which [Appellant] slept. The kitchen table had "piles and piles of mail on it." There was no place cleared for the preparation of food. Ms. Daniel tried to have services provided for [Appellant's] benefit, but no one would ever answer the phone and no one from the family ever cooperated. On cross, Ms. Daniel stated that [Appellant] was "very frail," and she did not feel that she was safe in her home without help.

Brookside representative[, Ms.] O'Connell[,] and eventual guardian[, Ms.] Miles[,] also testified. [Ms.] O'Connell stated that [Appellant's] bill at the facility was $66,030.89. No payments had ever been made on that bill, and Brookside was unable to ascertain where [Appellant's] social security benefits were going. At one point, Brookside had attempted to see if the less restrictive alternative of a power of attorney could be utilized, but "it did not go well." [Appellant] insisted that Malcolm M[.] (her grandson who, without explanation, failed [to] appear for the second and final hearing) handled her finances.

Brookside had arranged with a local attorney, James Egbert, Esquire, and a professional, [Ms.] Miles (who was ultimately appointed as guardian) to work with [Appellant] about the possibility of a power of attorney ("POA[]"). Ms. Miles confirmed

that she met with [Appellant] multiple times at Brookside to facilitate the implementation of a POA as a less restrictive alternative. However, when the final POA document was put before her, [Appellant] denied that she ever agreed to sign a POA. Given [Appellant's] abrupt change of attitude and her visceral reaction, Ms. Miles decided that she could not agree to become agent because [Appellant] was not freely consenting to it. Ms. Miles ultimately came to the conclusion stated that [Appellant] "had a very difficult time understanding the gravity of her situation" in terms of how her finances needed to be handled.

The [c]ourt invited the input of [Appellant's] counsel who agreed that her client was "an older person who needs assistance." Her proposal was that the [c]ourt give [Appellant] another opportunity to pursue having one of her grandsons as agent under POA. The [c]ourt then noted the lack of cooperation upon admission to Brookside particularly with regard to finances or an application for Medicaid benefits. The [c]ourt noted that turnabout in [Appellant's] consideration of a POA when the facility attempted to assist her which left the [c]ourt feeling a "sense of hopelessness" without providing additional assistance for [Appellant]. [Appellant's] counsel then acknowledged that the Medicaid application process is very in-depth and suggested Ms. Miles might again be considered as a possible POA rather than guardian — the very option which [Appellant] had earlier rejected. Finally, Maleek M[.] ([Appellant's] other grandson and the one who had not been handling her … finances) stated that his grandmother "doesn't really know the ramifications of the burden or the lack of, like you've already stated, addressing the issue." [Maleek M.] agreed to the appointment of Ms. Miles as guardian.

Brookside's brief at 3-9 (internal citations and emphasis omitted).

After a short recess, the orphans' court stated from the bench:

This decision is not made lightly. I have incorporated all of the evidence that I heard today. And the standard that I use in making my decision is what makes sense, what is logical.

And I believe that [Maleek M.] summed everything up very succinctly, that his grandmother is unaware of the consequences of her actions. It's difficult for her to see that her actions are not in her best interest.

- 7 -

And someone has to take the reins at this point in her life to get her back on track. Who knows, she may be able to move back into her home at some point. But that's never going to happen at the rate things are going now. It's not.

So I am compelled, based on that dose of reality and the evidence that was presented before me today and at the last hearing, to find that [Appellant] is incompetent and that I must appoint at this point a guardian of the person, as well as a guardian of the estate.

N.T., 5/15/23, at 65-66. The court also applauded Maleek M. for his interest in this case and expressed its desire for him to stay involved in his grandmother's care. *See id.* at 66 (acknowledging that Maleek M. was listed as an alternate on Appellant's healthcare power of attorney and stating, "I am going to ask Ms. Miles to work very closely with you in her role as guardian of the person. … I would like to still adhere to an individual's wishes.").

The orphans' court then proceeded to place its decision on the record, stating, in relevant part:

And now this 15th day of May, 2023, based upon the evidence received and the records following a hearing, this [c]ourt finds by clear and convincing evidence that [Appellant] is adjudged a totally incapacitated person.

This [c]ourt finds that [Appellant] suffers from severe cognitive impairment, a condition that totally impairs her capacity to receive and evaluate information effectively, and to make and communicate decisions concerning managing her financial affairs, or to meet the essential requirements for her physical health and safety.

This [c]ourt finds that there is no less restrictive alternative to the appointment of a guardian of the estate, and that a guardian of the estate is medically necessary to protect and advocate for the needs, welfare and interest of [Appellant].

Tracey A. Miles, Principal of Just Too Much to Do, LLC, is hereby appointed plenary permanent guardian of the estate of [Appellant]. Bond is waived.

…

This [c]ourt finds that there's no less restrictive alternative to the appointment of a guardian of the person, and that appointment of a guardian of the person is medically necessary to protect and advocate for [Appellant's] needs, her welfare, and her interests.

Tracey A. Miles, Principal of Just Too Much to Do, LLC, is hereby appointed plenary permanent guardian of the person of [Appellant]. The guardian of the person is directed to file a report on [Appellant's] social, medical and other relevant conditions as required by Pennsylvania Law every year on or before the anniversary of today's date.

The guardian of the person has the authority and the responsibility to decide where [Appellant] shall live, how her meals, personal care, recreation, [and] transportation will be provided.

The guardian of the person also has the authority to authorize and consent to medical treatment and surgical procedures necessary for the well-being of [Appellant]. It's this [c]ourt's expectation that family members are to be consulted in that effort.

For the purposes of HIPPA, the guardian of the person shall be considered a personal representative with the authority to review, receive, and discuss all protected health information related to [Appellant].

…

An appeal from this final decree may be taken by final notice of appeal within 30 days from today's date.

[Appellant], or any other interested party, may request a review hearing at any time pursuant to Pennsylvania Law wherein you may assert that there's been a change in capacity, there's been a change in the need for a guardian, or the failure of a guardian to perform their required duties.

[Appellant] has a right to be represented by counsel as she is very ably today. But she also has the right to file the Notice of Appeal or to seek a review hearing at any time or to seek modification or even termination of this guardianship that I am granting.

[Appellant's] rights shall be explained to her regarding filing an appeal and requesting a review hearing at the conclusion of today's hearing.

This [c]ourt's aforementioned judicial determination [has] taken into consideration all matters required by Pennsylvania Law.

This [c]ourt's findings of fact and conclusions of law have been placed on the record at this evidentiary hearing.

*Id.* at 67-72.

Our review reveals that the orphans' court's findings are supported by the evidence of record, and we discern no abuse of discretion in the court's determination that a plenary guardian of the person and estate should be appointed due to Appellant's total incapacitation. Thus, we conclude that the orphans' court's appointment of Ms. Miles was proper. Accordingly, we affirm.

Decree affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/8/2024